Jonathan D. Miller (SBN 220848)
jonathan@nshmlaw.com
Alison M. Bernal (SBN 264629)
alison@nshmlaw.com
NYE, STIRLING, HALE & MILLER, LLP
33 West Mission Street, Suite 201
Santa Barbara, California 93101
Telephone: (805) 963-2345
Facsimile: (805) 284-9590

Attorneys for Defendant, The Regents of the
University of California

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TANIA P., an individual,<br><br>Plaintiff<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA; and DOES 1-10, Inclusive.<br><br>Defendants. | Case No.: 2:22-cv-02959-GW-MRWx<br>*Assigned to the Hon. George H. Wu, Courtroom 9D*<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**<br><br>[*Filed concurrently with Local Rule 7-3 Declaration; Request for Judicial Notice; [Proposed] Order]]*<br><br>DATE: July 28, 2022<br>TIME: 8:30 a.m.<br>CRTRM: 9D |

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on July 28, 2022, at 8:30 a.m. in the courtroom of the Honorable George H. Wu, United States District Court for the Central District of California, located at 350 West First Street, Courtroom 9D, Los Angeles, CA 90012, Defendant The Regents of the University of California will, and hereby does, move to dismiss Plaintiff's Complaint [Dkt. 1-1] with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).[1] This motion is made following meet and confer efforts with counsel pursuant to Local Rule 7-3, which occurred on May 31, 2022. *See,* Declaration of Alison Bernal.

Plaintiff's Complaint is for gender discrimination in violation of Title IX and the companion state law claim, Education Code § 200, *et seq*. The two causes of action fail pursuant to Federal Rule of Procedure, Rule 12, for the following reasons:

1.     Both claims are barred by the applicable two-year statute of limitations. The allegations show the assault occurred in May 2018 and Plaintiff reported it to the University in June 2019. Plaintiff did not file this Complaint until February 16, 2022.

2.     Plaintiff has failed to allege facts sufficient to constitute a cause of action for deliberate indifference on a pre-assault theory.

3.     Plaintiff has failed to allege facts sufficient to constitute a cause of action for deliberate indifference on a pre-assault theory.

4.     Education Code § 220 does not apply to The Regents, and if it did, the statue contains an administrative exhaustion requirement that Plaintiff has not met nor alleged she met.

_____

[1] While motions to strike are generally governed by Rule 23(f), *Whittlestone, Inc., v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010), states that motions to strike damages are subject to a Rule 12(b)(6) motion. To the extent this Court disagrees, Defendant alternatively raises the motion to strike certain damages under Rule 12(f).

5. Plaintiff may not recover emotional distress damages under Title IX, and thus the prayer for relief must be stricken to the extent it requests emotional distress damages.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Request for Judicial Notice, the documents on file with the Court, and such further evidence and argument as the Court may permit.

Dated: June 9, 2022                     Respectfully submitted,

NYE, STIRLING, HALE & MILLER, LLP


By: _/s/ Jonathan D. Miller_____
Jonathan D. Miller, Esq.
Alison Bernal, Esq.
Attorney for Defendants, THE
REGENTS OF THE UNIVERSITY OF
CALIFORNIA

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 8

I.    INTRODUCTION ................................................................................................... 8

II.   RELEVANT FACTUAL BACKGROUND ........................................................ 11

    A.    University Policies on Sexual Assault ..................................................... 12

    B.    The May 20, 2018, Incident and Investigation ....................................... 12

III.  ARGUMENT ......................................................................................................... 14

    A.    Legal Standard On Motion To Dismiss ................................................... 14

    B.    Plaintiff's Claims Are Untimely .............................................................. 14

    C.    Plaintiff Has Not Adequately Alleged The Elements Of A Pre-Assault
         Claim ......................................................................................................... 18

         1.    Plaintiff does not allege an official pre-assault policy of deliberate
              indifference ................................................................................... 18

         2.    Plaintiff does not plausibly allege the assault occurred in a context
              subject to the University's control ................................................ 20

         3.    Plaintiff does not plausibly allege causation ............................... 21

    D.    Plaintiff Has Not Adequately Alleged The Elements of A Post-Assault
         Claim ......................................................................................................... 23

         1.    Plaintiff has not alleged the University exercised substantial
              control over both the harasser and the context in which the
              harassment occurred ..................................................................... 23

         2.    Plaintiff has not alleged the University's response was
              deliberately indifferent ................................................................. 24

              a.    The allegations related to academic and housing
                  accommodations are insufficient to find deliberate
                  indifference ....................................................................... 27

              b.    The University did not unreasonably delay the
                  investigation ..................................................................... 28

         3.    Plaintiff Has Failed To Adequately Plead Causation Or
              Additional Harassment ................................................................. 28

    E.    Plaintiff Fails to State A Claim for Violation of Educ. Code § 220. ................. 30

    F.    Plaintiff's Claim for Emotional Distress Damages Must Be Dismissed ........... 32

IV.   CONCLUSION ..................................................................................................... 32

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NOTICE OF MOTION AND MOTION TO DISMISS

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*A.T. v. Everett School District*,
  300 F. Supp. 3d 1243, 1258 (W.D. Wash. 2018) ........................................ 17

*Ashcroft v. Iqbal*,
  556 U.S. 662, 678 (2009) ............................................................................ 14

*Barnett v. Kapla*,
  2020 WL 7428321, at *15 (N.D. Cal. Dec. 18, 2020) ................................. 28

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 555, 557 (2007) .................................................................... 14

*Bowling v. Holt Pub. Sch.*,
  2017 WL 4512587, at *1–2 (W.D. Mich. May 26, 2017) ........................... 17

*Brown v. State*, 23 F.4th 1173, 1180-81 (9th Cir. 2022) ................................. 9, 21

*Burke v. Basil*,
  2020 WL 4435138, at *5 (C.D. Cal, July 23, 2020) ................................... 15

*C.S. v. Madison Metro. Sch. Dist.*,
  34 F.4th 536 (7th Cir. 2022) ....................................................................... 22

*Cummings v. Premier Rehab Keller*,
  142 S.Ct. 1562 (2022) ............................................................................ 11, 32

*Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*,
  526 U.S. 629, 643 (1999) ...................................................................... passim

*Delgado v. Stegall*,
  367 F.3d 668, 672 (7th Cir. 2004) .............................................................. 19

*Doe v. California Inst. of Tech.*,
  2020 WL 3978081, at *3 (C.D. Cal. May 12, 2020) .................................. 23

*Doe v. Dallas Indep. Sch. Dist.*,
  153 F.3d 211, 219 (5th Cir. 1998) ............................................................. 25

*Doe v. Sch. Bd. of Broward County, Fla.*
  604 F.3d 1248, 1259 (11th Cir. 2010) ........................................................ 25

*Doe v. Univ. of S. California*,
  2019 WL 4229710, at *3 (C.D. Cal. July 9, 2019) ....................................... 8

*Donovan v. Poway Unified Sch. Dist.*,
  167 Cal.App.4th 567, 603–09 (2008) .......................................................... 32

*Farmer v. Kansas State Univ.*,
  918 F.3d 1094, 1103–04 (10th Cir. 2019) .................................................. 29

*Gebser v. Lago Vista Indep. Sch. Dist.*,

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**NOTICE OF MOTION AND MOTION TO DISMISS**

524 U.S. 274, 290 (1998)..................................................................................................20, 22

*Ha v. Nw. Univ*,
   No. 14 C 895, 2014 WL 5893292, at *2 (N.D. Ill. Nov. 13, 2014)...................................30

*Hill v. Cundiff*,
   797 F.3d 948 (11th Cir. 2015) ..........................................................................................25

*Ileto v. Glock Inc.*,
   349 F.3d 1191, 1199-1200 (9th Cir. 2003) .......................................................................14

*Jackson v. Birmingham Bd. Of Educ.*,
   544 U.S. 167, 177 (2005)..................................................................................................19

*Karasek v. Regents of the Univ. of Cal.*,
   2015 WL 8527338, at * 18 (N.D. Cal., Dec. 11, 2015)..............................................11, 22

*Karasek v. Regents of the Univ. of Cal.,,*
   956 F.3d 1093, 1112 (9th Cir. 2020) ...........................................................................passim

*Kelly v. Yale University*,
   2003 WL 1563424 (D. Conn. Mar. 26, 2003) ...................................................................27

*Lopez v. Regents of the Univ. of Cal.*,
   5 F.Supp.3d 1106, 1123 (C.D. Cal. 2013) ........................................................................20

*Lopez v. Smith*,
   203 F.3d 1122, 1129-30 (9th Cir. 2000) ...........................................................................32

*Lucas v. Dep't of Corr.*,
   66 F.3d 245, 248 (9th Cir. 1995) ......................................................................................14

*Lukovsky v. City & Cty. of San Francisco*,
   535 F.3d 1044, 1048 (9th Cir. 2008) ...........................................................................15, 16

*Mansourian v. Regents of Univ. of Cal.*,
   602 F.3d 957, 968 (9th Cir. 2010) ....................................................................................19

*Menzel v. Scholastic, Inc.*,
   No.17-CV-05499-EMC, 2018 WL 1400386, at *2 (N.D. Cal., Mar. 19, 2018) ....................19

*Moore v. Regents of the Univ. of Calif.*,
   2016 WL 2961984 (N.D. Cal. May 23, 2016)...................................................................26

*Oden v. N. Marianas Coll.*,
   440 F.3d 1085, 1089 (9th Cir. 2006) ...........................................................................passim

*Patel v. Kent Sch. Dist.*,
   648 F.3d 965, 974 (9th Cir. 2011) ....................................................................................19

*Paul G. v. Monterey Peninsula Unified Sch. Dist.*,
   933 F.3d 1096, 1100 (9th Cir. 2019) ................................................................................31

*Ross v. Univ. of Tulsa*,
   180 F.Supp.3d 951, 968 (N.D. Okla. 2016), aff'd, 859 F.3d 1280 (10th Cir. 2017)...............22

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

6

**NOTICE OF MOTION AND MOTION TO DISMISS**

*Stanley v. Trustees of CSU*,
  433 F.3d 1129 (9th Cir. 2006) ...................................................................... 8, 14, 15, 24

*Starr v. Baca*,
  652 F.3d 1202, 1216 (9th Cir. 2011) ........................................................................ 14

*Tanjaya v. Regents of the Univ. of Cal.*,
  C.D. Cal. Case 2:19-cv-02956-GW-FFM, Dkt. 56, p. 10 ........................................ 30

*Twersky v. Yeshiva University*,
  993 F. Supp. 2d 429, 439 (S.D.N.Y. 2014) .............................................................. 16

*Varnell v. Dora Consol. Sch. Dist.*
  2013 WL 12146483, at *7 (D.N.M. May 13, 2013) ................................................. 16

*Walsh v. Tehachapi Unified Sch. Dist.*,
  827 F.Supp.2d 1107, 1124 (E.D. Cal. 2011) ............................................................ 31

*Williams v. Board of Regents of the Univ. System of Georgia*,
  477 F.3d 1282, 1296 (11th Cir. 2007) ................................................................ 25, 29

**Statutes**

20 U.S.C. § 1681(a) ...................................................................................................... 30

California Education Code § 220 ....................................................................... 8, 10, 11, 30

California Education Code § 262.3 ............................................................................. 11, 31

California Education Code § 66261.5 ............................................................................... 31

**Rules**

Federal Rule of Civil Procedure Rule 12(b)(6) ............................................................... 14

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

7

**NOTICE OF MOTION AND MOTION TO DISMISS**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The University of California is committed to preventing the scourge of sexual assault. To that end, the University has established policies that outline prohibited sexual conduct, as well as procedures allowing the University to investigate and adjudicate allegations of such assaults. The plaintiff here, Tania P. ("Plaintiff"), a student at University of California, Santa Barbara, ("the University") availed herself of those policies and procedures when she reported in June 2019 an alleged assault that occurred the prior school year, in May 2018. The University investigated her complaint and ultimately concluded that it was supported by a preponderance of the evidence. The University suspended her assailant for two years.

Now, four years later, Plaintiff has filed this lawsuit alleging The Regents violated Title IX and California Education Code § 220 on the theory The Regents acted with deliberate indifference toward Plaintiff's report of sexual assault.

Plaintiff's allegations cannot give rise to civil liability for multiple procedural and substantive reasons.

First, Plaintiff filed her Complaint outside the limitations period. The statute of limitations period for Title IX is borrowed from the state's personal injury statute, which, under California law, is two years. *Doe v. Univ. of S. California*, 2019 WL 4229750, at *3 (C.D. Cal. July 9, 2019); *Stanley v. Trustees of CSU*, 433 F.3d 1129 (9th Cir. 2006) (analyzing under prior one-year statute for personal injury cases). Plaintiff filed her Complaint on February 16, 2022, and thus, to be timely, the claim must have occurred on or after February 16, 2020. But nearly all of the alleged events occurred before then, including Plaintiff's assault (Dkt. 1-1, ¶ 10), Plaintiff's report to the University, (*id.,* at ¶ 11), and the alleged delay in the commencement of the University's investigation (*id.,* at ¶ 13). Moreover, the assailant graduated March 20, 2020, and the University had moved to remote instruction ten days prior, on March 10, 2020. (*Id.*, at ¶ 16; RFJN, Ex. 3.) Accordingly, there is at most a 23-day

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**NOTICE OF MOTION AND MOTION TO DISMISS**

window the University could have caused an actionable harm under Title IX, and nothing in the Complaint alleges any such harms occurred in this timeframe.

Second, Plaintiff has failed meet the elements of the pre-assault theory of liability under Title IX. *Karasek v. Regents* counsels that a pre-assault theory of liability under Title IX requires "(1) a school maintained a policy of deliberate indifference to reports of sexual misconduct, (2) which created a heightened risk of sexual harassment that was known or obvious (3) in a context subject to the school's control, and (4) as a result, the plaintiff suffered harassment that was 'so severe, pervasive, and objectively offensive that it can be said to [have] deprive[d] the [plaintiff] of access to the educational opportunities or benefits provided by the school.'" *Karasek,* 956 F.3d 1093, 1112 (9th Cir. 2020). The first element requires the University recognized an unreasonable risk and intended to expose Plaintiff to such risk, while the fourth element requires the University to have *caused* Plaintiff to have suffered severe, pervasive harassment. The facts alleged in the Complaint do not meet these requirements, as even if every allegation in the Complaint were true, Plaintiff has not alleged the assailant was a member of the purportedly errant fraternity, nor could she, as the University did not maintain a policy of deliberate indifference to reports of assault of the type suffered by Plaintiff. Nor do the facts alleged meet the third element of control. It is not enough for the University to have control over the respondent and the ability to discipline him; there must also be control over the context where the assault occurred. *Brown v. State*, 23 F.4th 1173, 1180-81 (9th Cir. 2022). The Complaint contends the assault occurred in an off-campus fraternity.[2] The alleged assailant was not a member of the

---

[2] The witnesses interviewed during the Title IX investigation contradicted this, stating the alleged assault occurred in the respondent's off-campus apartment that was not affiliated with the fraternity in any way. Nevertheless, understanding the Court must accept Plaintiff's allegations as true for purposes of a Rule 12 motion, the Complaint still fails to allege the requisite control as stated herein.

**NOTICE OF MOTION AND MOTION TO DISMISS**

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

fraternity, which Plaintiff acknowledges. Thus, efforts to bring in allegations relating to the fraternity which the alleged assailant was not associated with simply have no bearing on this case. The Ninth Circuit just ruled on January 25, 2022, that in the context where a male student physically assaulted a female student at the male student's off-campus residence, the university lacked substantial control, and thus there was no deliberate indifference even where the university was allegedly deliberately indifferent to reports the *same* male student had physically assaulted two other female students. *Ibid.* Likewise here, the University lacked substantial control over the context of Plaintiff's alleged assault. And more compelling than *Brown*, Plaintiff does not allege the University had knowledge of prior assaults committed by this respondent. The lack of control is fatal to the Title IX and related California statutory claims.

Third, Plaintiff has failed to allege facts sufficient to sustain a claim for post-assault liability under Title IX Specifically, a plaintiff seeking to hold a university liable for its response to a reported sexual assault must plausibly plead: (1) the University exercised control over the harasser and the context in which the harassment occurred; (2) Plaintiff suffered harassment so severe and pervasive it deprived her of access to an educational opportunity; (3) the University had knowledge of the harassment; (4) the University acted with deliberate indifference to the harassment the plaintiff faced; and, (5) the deliberate indifference caused plaintiff to undergo harassment. *Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 645-650 (1999). Here, the allegations cannot show the University, who abided by law enforcement's requested holds, then completed its investigation through a process which ultimately affirmed Plaintiff's version of events, made an "official decision…not to remedy the violation." *Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1089 (9th Cir. 2006). Thus, Plaintiff's conclusory allegations in the Complaint do not establish the fourth or fifth element: deliberate indifference and causation. Moreover, like the pre-assault theory, the facts alleged

10

do not establish the control element: Plaintiff has not alleged she suffered further harassment caused by the University's deliberate indifference in a context within the University's control, nor could she, as the respondent was not within the University's control during the limitations period.

Fourth, Plaintiff's claim for violation of Education Code § 220 fails (1) for the same reasons discussed above with respect to their Title IX claims, (2) because Section 220 does not apply to postsecondary institutions such as the University (*Karasek v. Regents of the Univ. of Cal.,* 2015 WL 8527338, at * 18 (N.D. Cal., Dec. 11, 2015) ("section 220 does not apply to a postsecondary institution such as the University")), and (3) even if it did apply, Plaintiff has not exhausted the required administrative remedies. Cal. Educ. Code § 262.3 ("a person who alleges that he or she is a victim of discrimination may not seek civil remedies pursuant to this section until at least 60 days have elapsed from the filing of an appeal to the State Department of Education pursuant to Chapter 5.1 (commencing with Section 4600) of Division 1 of Title 5 of the California Code of Regulations.").

Finally, the prayer for relief requests damages that are not available in Title IX actions since the Supreme Court's decision in *Cummings v. Premier Rehab Keller*, 142 S.Ct. 1562 (2022). The prayer for general damages and reference to emotional distress damages is not allowable, and thus must be dismissed.

At bottom, the University followed its procedures and state and federal law when investigating Plaintiff's reported assault. Thus, Plaintiff has failed to adequately plead a violation of Title IX or Education Code § 220 and the University cannot be held liable for deliberate indifference. For these reasons, and as more fully explained below, the University requests the Court grant its motion to dismiss.

## II.    RELEVANT FACTUAL BACKGROUND

In ruling on a motion to dismiss, the Court must accept all facts alleged in the complaint as true, together with those facts which may be judicially noticed. While The Regents disputes Plaintiff's version of facts set forth in the Complaint, they are

NOTICE OF MOTION AND MOTION TO DISMISS

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA  93101

addressed as set forth by Plaintiff solely for purposes of this motion.

### A.   University Policies on Sexual Assault

The University has established policies on investigating and disciplining cases of sexual assault alleged against students, which are publicly available on the University's website. (RFJN, Ex. 1.) As is relevant here, the policies provide that when the University receives a report of an alleged assault, the University will provide the survivor with resources, including a CARE advocate to provide confidential assistance. (*Id.*, at 9.) The advocate's assistance may include reporting the assault if the survivor feels comfortable doing so, helping the survivor obtain a "no contact" order, coordinating requests for academic or housing assistance, and general assistance throughout the process. (*Id.*, at 9-10.)

The policies also outline the options a survivor has when choosing whether to report an assault, including a report to law enforcement, a report to the University's Title IX office, or both. (*Id.*, at 10-11.) If the survivor reports to law enforcement, the Title IX investigation may be delayed at the request of the investigating agency. (*Id.*) The policies set forth the procedure the University will use when investigating and adjudicating a claim of sexual assault reported to the Title IX office, which provide the survivor with access to resources, while accounting for the due process rights available to respondents. (*Id.*, at 13-22.) At the conclusion of a Title IX investigation, Title IX provides its preliminary determinations. (*Id.* at 20.)

If either party contests the Title IX investigator's preliminary determinations, there will be a factfinding hearing before a hearing officer. The hearing is to determine whether a violation of the SVSH Policy occurred. The University's role in the hearing is neutral. (*Id.*, at 28.)

### B.   The May 20, 2018, Incident and Investigation

Plaintiff was a student at the University. (Dkt. 1-1, ¶ 9.) On May 20, 2018, Plaintiff alleges another student assaulted her at an off-campus fraternity house. (*Id.*, at ¶ 10.) Plaintiff does not allege the other student was a member of a fraternity, nor

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**NOTICE OF MOTION AND MOTION TO DISMISS**

could she, as the student was not a member of the fraternity and did not reside at the fraternity house.

Plaintiff reported the incident to the Santa Barbara County Sheriff's Department and the University Title IX office over a year later, on June 28, 2019, completing the Title IX complaint form on July 22, 2019. (*Id.,* at ¶ 11.) The Sheriff's Department requested the Title IX office hold its investigation to avoid impacting the criminal investigation. (*Id.,* at ¶¶ 12-14, RFJN, Ex. 1, at pp. 6-7.) Plaintiff alleges she did not authorize the law enforcement hold. (Dkt. 1-1, at ¶ 14.) Nevertheless, it is a requirement of University policy to reasonably hold an investigation at law enforcement's request. (RFJN, Ex. 1, at pp. 6-7.) In this case, Plaintiff requested Title IX begin its investigation despite the Sheriff's requested hold, and when Plaintiff made that request, Title IX accommodated her, beginning its investigation on February 25, 2020. (Dkt. 1-1, at ¶ 13.)

The Title IX investigator interviewed several witnesses who were at the off-campus residence on the night of the alleged assault and observed Plaintiff and the respondent. The Title IX investigator, who the policies charge with making credibility determinations as to the witnesses and parties, determined the preponderance of evidence did not substantiate the allegation that the respondent engaged in sexual assault-penetration against the complainant. Plaintiff contends Title IX's November 2, 2020, report is "false and irrational" because it failed to substantiate Plaintiff's complaint of sexual assault (something the law enforcement investigation also failed to substantiate). (Dkt. 1-1, ¶ 22.)

Plaintiff thereafter followed the University procedures in place to challenge Title IX's preliminary findings. (Dkt. 1-1, ¶ 31.) At the conclusion of the hearing, where the witnesses who had previously participated in the Title IX investigation declined to participate because of retaliation from their prior interviews, the hearing officer reversed the preliminary finding and determined the preponderance of evidence substantiated the allegation that Plaintiff was too incapacitated to consent.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

13

(*Id.*, at ¶ 33.)

## III.   ARGUMENT

### A.   Legal Standard On Motion To Dismiss

A motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6)[3] requires the Court to determine whether the plaintiff has pled a cognizable claim in the complaint. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). To survive a motion to dismiss, a complaint must plead sufficient factual matter to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The emphasis is on factual pleadings, as a pleading that offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement" will not suffice. *Id.*, citing and quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007). "[T]he factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

If a claim for relief cannot be cured by amendment, it should be dismissed without affording leave to amend. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

### B.   Plaintiff's Claims Are Untimely

Title IX claims brought in California are governed by California's two-year limitations period for personal injury actions. *Doe*, 2019 WL 4229750, at *3 (citing *Stanley,* 433 F.3d at 1136). Education Code § 220 claims are likewise governed by the two-year limitations period for personal injury actions. *Burke v. Basil,* 2020 WL

---

[3] While motions to strike are generally governed by Rule 12(f), *Whittlestone, Inc., v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010), states that motions to strike damages are subject to a Rule 12(b)(6) motion. To the extent this Court disagrees, Defendant alternatively raises the motion to strike certain damages under Rule 12(f).

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

4435138, at *5 (C.D. Cal, July 23, 2020).

To be timely, a plaintiff therefore must bring a claim within two years after the claim accrues. While state law governs the length of the limitations period, federal law "governs the determination of the point at which the limitations period begins to run." *Stanley,* 433 F.3d at 1136. Under federal law, the "touchstone for determining the commencement of the limitations period is notice: a cause of action generally accrues when a plaintiff knows or has reason to know of the injury which is the basis of his action." *Stanley*, 433 F.3d at 1136 (internal quotations omitted).

Plaintiff filed her Complaint on February 16, 2022, and thus, to be timely, the claim must have accrued on or after February 16, 2020. On its face, the Complaint does not meet this timeline.

A Title IX claim accrues—and the limitations period begins to run—"when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Lukovsky v. City & Cty. of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008). Knowledge of the "injury," the Ninth Circuit has explained, means knowledge of the "actual injury," not when the plaintiff "suspects a legal wrong." *Id.*, at 1049–51. The court has often reiterated that a plaintiff does not need to know that she possesses a legal cause of action, she must simply be aware of the actual injury and its cause. *See id.*

In the Title IX context, the injury which is the basis of the action is the additional harassment caused by the University's alleged deliberate indifference. *Davis,* 526 U.S. at 645-650. For the pre-assault claim to succeed, Plaintiff would need to establish the University's deliberate indifference to prior reports of assault *caused* Plaintiff's assault. The claim thus accrued at the time of the injury giving rise to the claim – her assault, on May 20, 2018. (Dkt. 1-1, at ¶ 10.) But Plaintiff did not file her Complaint until nearly four years later, on February 16, 2022—more than two years too late. (Dkt. 1-1.) Plaintiff's pre-assault claims are therefore untimely.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA  93101

**NOTICE OF MOTION AND MOTION TO DISMISS**

Under the same logic, Plaintiff's post-assault claim is time-barred. For a post-assault claim, the injury is the additional harassment caused by the institution's deliberate indifference (here, the fear of encountering her assailant in a situation within the University's control) triggers accrual and starts the statute of limitations period. The pre-assault claim is fundamentally the same, except that the plaintiff alleges the deliberate indifference which *caused* Plaintiff's assault occurred before her assault, i.e., *pre*-assault, and that the resulting additional harassment is the assault itself (May 20, 2018).

Applying these principles, courts have repeatedly held that a plaintiff need not know she has a plausible legal claim for damages for claims to accrue; the claims accrue on the date of the harm, even if the plaintiff does not understand her legal claims until later. For example, in *Lukovsky*, the court considered accrual of a claim for discriminatory hiring practices. The "question" for purposes of accrual was "what must the plaintiffs 'discover'—that there has been an adverse action, or that the employer acted with discriminatory intent in performing the act?" 535 F.3d at 1048. The court held that the former controlled, and the claim accrued when the individuals "received notice they would not be hired, . . . even if at that point in time [they] did not know of the legal injury, i.e., that there was an allegedly discriminatory motive underlying the failure to hire." *Id*. at 1051.

*Twersky v. Yeshiva University*, 993 F. Supp. 2d 429, 439 (S.D.N.Y. 2014), reached a similar result. There, plaintiffs argued their Title IX claim did not accrue "until [the school president] admitted" that he "had been aware of the risk of sexual abuse at [the school]." Before that point, plaintiffs argued they "were unaware that the school defendants had injured them." *Id*. at 440. The court rejected that argument, explaining: "[d]iscovery of injury [at the time of the abuse] is what starts the clock, regardless of how complex or difficult to discover the elements of the cause of action may be." *Id*.; *see also Varnell v. Dora Consol. Sch. Dist*. 2013 WL 12146483, at *7 (D.N.M. May 13, 2013) (claim for "failure to prevent" abuse

**NOTICE OF MOTION AND MOTION TO DISMISS**

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA  93101

accrued at time of abuse); *Bowling v. Holt Pub. Sch.*, 2017 WL 4512587, at *1–2 (W.D. Mich. May 26, 2017) (claim for "failing to protect" from assault accrued at time of assault); *A.T. v. Everett School District*, 300 F. Supp. 3d 1243, 1258 (W.D. Wash. 2018) (claim accrued once plaintiff knew she had been harmed); *Doe,* 2019 WL 4229750. As Judge Wilson explained in *Doe*:

> Even if Plaintiff generally did not learn until recently about USC's alleged deliberate indifference spanning over approximately thirty years, Plaintiff's understanding of her injury at the time of her examination by Dr. Tyndall means that the statute of limitations period began to run immediately following the examination. To illustrate, Plaintiff does not argue that Dr. Tyndall's behavior during Plaintiff's examination in 1991 was of no consequence; Plaintiff acknowledges that she knew Dr. Tyndall's examination was abnormal at the time it occurred. Instead, Plaintiff merely argues that Dr. Tyndall's behavior was of lesser consequence to Plaintiff until she read the Los Angeles Times article fully exposing Dr. Tyndall to the public. But this position reflects Plaintiff's focus upon "the time at which the consequences of the acts became most painful," <u>Stanley</u>, 433 F.3d at 1136 (internal quotation marks and citation omitted), not the time at which the alleged discriminatory acts by USC and Dr. Tyndall occurred.

2019 WL 4229750, at *4. Thus, in *Doe,* the Court dismissed the Title IX claim with prejudice where the plaintiff alleged she was unaware of the school's policy of deliberate indifference until she read an article about Dr. Tyndall decades later.

The post-assault claim here is likewise time-barred. To prevail on a post-assault claim, Plaintiff must show (among other things) that the University's deliberate indifference to her report of assault caused *additional* harassment to occur. The additional harassment is the "actual injury" that causes the claim to accrue. Here, the Complaint documents Plaintiff's knowledge of her "actual injury" well beyond the statutory period. Paragraphs 16 and 17 reference Plaintiff's knowledge in 2019 of the University's alleged deliberate indifference. Paragraph 18 alleges she communicated this to Title IX, and Paragraph 21 references the purported harm the alleged deliberate indifference caused Plaintiff, all as of 2019. Thus, Plaintiff knew or had reason to know of the University's alleged policy of deliberate indifference in 2019 at the latest, knew this caused her fear of encountering her assailant, and thus knew of her injury at that time. It is not when

**NOTICE OF MOTION AND MOTION TO DISMISS**

she obtained documents in response to a Public Records Act request (¶ 36), as that focuses on the knowledge of a legal right of action, not on knowledge of her alleged injury. A claim for violation of Title IX or Education Code § 220 requires a deprivation of education benefit based on gender. If all allegations in her Complaint are true, Plaintiff was aware of this alleged deprivation long before February 16, 2020, yet did not file the Complaint within the statutory time period. The claim is time-barred and cannot be cured by amendment.

## C.   Plaintiff Has Not Adequately Alleged The Elements Of A Pre-Assault Claim

Pleading a pre-assault claim is a heavy burden, because the University can be held liable only when it "intentionally act[s] in clear violation of Title IX." *Davis,* 526 U.S. at 642. Proving the University intended to cause a sexual assault by a third party is difficult. To ensure liability only for "intentional" acts, the Ninth Circuit imposed a stringent standard for pre-assault claims, requiring Plaintiff to allege that "(1) a school maintained a policy of deliberate indifference to reports of sexual misconduct, (2) which created a heightened risk of sexual harassment that was known or obvious (3) in a context subject to the school's control, and (4) as a result, the plaintiff suffered harassment that was 'so severe, pervasive, and objectively offensive that it can be said to [have] deprive[d] the [plaintiff] of access to the educational opportunities or benefits provided by the school.'" *Karasek*, 956 F.3d at 1112 (footnote omitted) (quoting *Davis*, 526 U.S. at 650). Plaintiff cannot meet the first, third, and fourth element.

### 1.   Plaintiff does not allege an official pre-assault policy of deliberate indifference

First, Plaintiff cannot allege any "policy of deliberate indifference" to a "known or obvious" risk. To satisfy this element, Plaintiff must meet a "stringent standard" and show the University "recognize[d] [an] unreasonable risk and actually intend[ed] to expose [Plaintiff] to such risks without regard to the consequences."

Nye, Stirling, Hale & Miller
33 West Mission Street, Suite 201
Santa Barbara, California 93101

**NOTICE OF MOTION AND MOTION TO DISMISS**

1   *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011). Allegations of

2   "negligen[ce], laz[iness], or careless[ness]" are insufficient. *Oden,* 440 F.3d at 1089.

3   Deliberate indifference requires a defendant to ignore "risks so great that they are

4   almost certain to materialize if nothing is done," because "only in such cases" can a

5   party be deemed to have "allow[ed] the consequences to occur though they could

6   readily be prevented." *Delgado v. Stegall*, 367 F.3d 668, 672 (7th Cir. 2004).

7   Plaintiff cannot meet that high standard.

8        Plaintiff points to three prior instances of sexual assault "against members of

9   the Gamma Zeta Alpha," and thus alleges the University "knew or should have

10  known the *Fraternity posed a risk* of sexual harassment and assault to female

11  students." (Dkt. 1-1, ¶¶ 36, 37 [emphasis added].) But nowhere does Plaintiff allege

12  this purported practice constituted official University "policies" or that adoption of

13  those "policies" was deliberately indifferent, i.e., that the University knew they

14  created a heightened risk but kept them regardless. Nor could she. The University's

15  official policies evidence a policy of investigating and adjudicating claims of sexual

16  assault. See, RFJN, Exhibit 1. Plaintiff's "conclusory allegation[s] based on

17  information and belief remain[] insufficient under *Iqbal/Twombly*," especially where

18  they contradict the University's official policies. *Menzel v. Scholastic, Inc.*, No.17-

19  CV-05499-EMC, 2018 WL 1400386, at *2 (N.D. Cal., Mar. 19, 2018); *compare,*

20  *Mansourian v. Regents of Univ. of Cal.*, 602 F.3d 957, 968 (9th Cir. 2010) (finding

21  there was an official policy because it involved "[d]ecisions to create or eliminate

22  teams or to add or decrease roster slots for male or female athletes … , **not**

23  **practices by individual students or staff**.") [emphasis added]; *Jackson v.*

24  *Birmingham Bd. Of Educ.*, 544 U.S. 167, 177 (2005) (allegations of retaliatory act

25  that was official decision of the board of education is sufficient for Rule 12

26  purposes).

27        Plaintiff's allegation the University had constructive knowledge of a history

28  of sexual harassment/assault by members of the fraternity is likewise insufficient to

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

19

**NOTICE OF MOTION AND MOTION TO DISMISS**

meet the pre-assault pleading requirements. Plaintiff alleges the University "knew or should have known" the *Fraternity* posed a risk of harm. (Dkt. 1-1, ¶¶ 36, 37.) But more is required for these allegations to support an official policy of deliberate indifference, because deliberate indifference only exists when there is *actual* notice, not constructive notice: when "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures" knows of issues and fails to respond. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998); *see also, Oden*, 440 F.3d at 1089 (courts do not impose "liability on principles of respondeat superior or constructive notice,' instead demanding actual notice to an official of the defendant"). Courts, applying that principle, have dismissed Title IX claims absent allegations that sufficiently senior officials knew of harassment. See, e.g., *Lopez v. Regents of the Univ. of Cal.*, 5 F.Supp.3d 1106, 1123 (C.D. Cal. 2013) (claim inadequate because there were no allegations that appropriate "University officials" were informed of incidents and "no facts which explain the nature or scope of information the U.C. Regents possessed").

The same is true here. Even if the allegations in Plaintiff's Complaint were true, knowledge of the prior assaults at a fraternity do not evidence that an appropriate person at the University had actual notice of the risk that Plaintiff faced from a student unrelated to that fraternity. Nowhere in the Complaint does Plaintiff allege the University knew or should have known of the risk the *respondent* posed. The respondent was not a member of the fraternity. This does not meet the stringent requirements for a pre-assault deliberate indifference claim. Absent knowledge by a University official with power to act of prior acts from the respondent at issue, or to institute a policy to prevent future assaults, the University's failure to do so cannot constitute a "policy of deliberate indifference." Accordingly, Plaintiff has not adequately alleged a policy of deliberate indifference.

### 2.   Plaintiff does not plausibly allege the assault occurred in a context subject to the University's control

**NOTICE OF MOTION AND MOTION TO DISMISS**

Nye, Stirling, Hale & Miller
33 West Mission Street, Suite 201
Santa Barbara, California 93101

Second, Plaintiff has failed to plausibly allege the University had control over the context where the assault occurred. *Brown,* 23 F.4th at 1180. *Brown* involved a situation where the school had notice a male student physically assaulted two other female students, and he later assaulted the plaintiff at an off-campus residence. *Ibid.* Even against these facts, the Ninth Circuit held that the University did not have control over the context of the assault at issue where the assault occurred at an off-campus residence unconnected to a school activity. The *Brown* court explained:

> Even though the abuse may not have occurred absent Bradford and Brown's shared connection to the University, not everything that happens between fellow students occurs "under [the operations of]" the institution. 20 U.S.C. §§ 1681(a), 1687. It would be unreasonable to conclude that Title IX gives educational institutions adequate notice that accepting federal education funds imposes on them liability for what happens between students off campus, unconnected to any school event or activity. *See Davis*, 526 U.S. at 640, 119 S.Ct. 1661.

*Brown,* 23 F.4th at 1180.

It is Plaintiff's burden to plausibly allege the assault occurred in a context subject to the University's substantial control. She has not met this burden. Plaintiff alleges the assault occurred in an off-campus fraternity, but the assailant was not a member of that fraternity. Even assuming the allegations as true, Plaintiff must plausibly allege the off-campus fraternity is in the University's control. She has not done so, and the lack of control is fatal to the Title IX and related California statutory claims.

### 3. Plaintiff does not plausibly allege causation

Third, Plaintiff has failed to allege any pre-assault policy of deliberate indifference caused her to suffer her alleged assault. Specifically, Plaintiff does not adequately allege a policy of deliberate indifference to a known or obvious risk because she has not shown any prior assaults were sufficiently similar to the one she later suffered. The failure to respond to prior assaults will show "deliberate indifference" only if those assaults demonstrated the risk of future assaults like the one a plaintiff faced. *See Ross v. Univ. of Tulsa*, 180 F.Supp.3d 951, 968 (N.D.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**NOTICE OF MOTION AND MOTION TO DISMISS**

Okla. 2016), aff'd, 859 F.3d 1280 (10th Cir. 2017) (a prior complaint of sexual misconduct "which involved a victim who was unwilling to proceed and who stated only that [assailant] took 'advantage of' her," was insufficient to put school on notice that *the same* assailant "posed a 'substantial risk' of sexually assaulting other TU students"); *Gebser*, 524 U.S. at 291 (school district's knowledge of inappropriate comments by teacher "was plainly insufficient to alert the principal to the possibility that [teacher] was involved in a sexual relationship with a student").

The court in *Karasek* analyzed a causation analysis in the context of a pre-assault claim. There, the court explained "'[t]he element of causation ensures that Title IX liability remains within proper bounds. To that end, adequately alleging a causal link between a plaintiff's harassment and a school's deliberate indifference to sexual misconduct across campus is difficult.' *Karasek*, 956 F.3d at 1114. For instance, if a university systemically failed to discipline employees for harassment and an employee who had not been disciplined for past harassment committed further harassment, it is plausible that the university's policy failure contributed to that. Here, however, there is no non-conclusory causal link alleged between the University's general policy of deliberate indifference—or the heightened risk it created—and what happened to [the plaintiff] in particular." *Karasek v. Regents of the Univ. of Calif.*, 2020 WL 6684869, at *19 (N.D. Cal., Nov. 12, 2020); *see also, C.S. v. Madison Metro. Sch. Dist.*, 34 F.4th 536 (7th Cir. 2022) (en banc) (Title IX does not permit institutional liability based solely on knowledge of the risk of future misconduct).

Here, like in *Karasek,* there are no non-conclusory allegations to establish a causal link between the University's purported general policy of deliberate indifference and what happened to Plaintiff in particular. Without allegations of alleged prior assaults by that same respondent, the Court cannot weigh whether prior assaults by members of a fraternity of which the respondent was not a member were enough to put the University on notice of the risk that the respondent would assault.

A contrary holding would "come[] too close to asking that [the University] be held liable for its failure to 'purg[e] [its] schoo[l] of actionable peer harassment' to pass muster under *Davis*." *Doe v. California Inst. of Tech.*, 2020 WL 3978081, at *3 (C.D. Cal. May 12, 2020) (citing Davis, 526 U.S. at 648) (alterations in original).

***

In short, to proceed on her pre-assault claim, Plaintiff must plausibly allege not just prior assaults—but prior assaults (i) of which an appropriate University official knew, (ii) that were handled with deliberate indifference, and (iii) that this deliberate indifference caused Plaintiff's assault. Because Plaintiff does not plausibly allege facts along those lines, her claim fails.

### D.   Plaintiff Has Not Adequately Alleged The Elements of A Post-Assault Claim

A plaintiff seeking to hold an institution liable for post-assault sexual harassment in violation of Title IX must prove five requirements: (1) the institution exercised substantial control over both the harasser and the context in which the harassment occurred; (2) the plaintiff suffered harassment that was so severe, pervasive, and objectively offensive that it deprived plaintiff of access to educational opportunities; (3) the institution must have had actual knowledge of the harassment; (4) the institution was deliberately indifferent to the sexual harassment and discrimination plaintiff faced; and, (5) the institution's deliberate indifference caused Plaintiff to undergo harassment. *Davis,* 526 U.S. at 645-650.

Each of these elements is a requirement for Title IX liability, such that failure to adequately allege any one element renders a plaintiff's claim infirm. Plaintiff's claims should be dismissed because she failed to adequately plead the first, fourth and fifth elements.

#### 1.   Plaintiff has not alleged the University exercised substantial control over both the harasser and the context in which the harassment occurred

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA  93101

23

The first element required for a post-assault deliberate indifference theory focuses on the control the University exercises over both the harasser and the context of the harassment. *Davis,* 526 U.S. at 645-650. Plaintiff fails to allege any post-assault harassment that occurred in a context subject to the University's control—much less any harassment that occurred within the limitations period (i.e., between February 16, 2020 and March 20, 2020).

Plaintiff alleges in paragraph 19 that during the delayed investigation (July 2019 to February 2020), she "saw [her assailant] numerous times in Isla Vista causing her to run away and have severe panic attacks." This allegation fails to meet the requirement of control: there are no allegations that the University had control over the particular, off-campus context. The lack of control is amplified by the timeline here. As set forth in section III(B), *supra*, there is a two-year statute of limitations period. The respondent in this matter last took classes at the University during the winter Quarter of 2020, ending March 20, 2020. Before that, on March 10, 2020, the University transitioned to remote instruction in response to the pandemic. (RFJN, Ex. 3.) When the respondent graduated and left the University, he was no longer within the University's control. *Stanley,* 433 F.3d at 1137 (university not liable for deliberate indifference where plaintiff no longer a student during the limitation period). Plaintiff therefore has not alleged, and cannot allege, the University caused her to undergo any harassment during the limitations period over which the University had control, a time when the respondent was not present at the University.

## 2. Plaintiff has not alleged the University's response was deliberately indifferent

An educational institution acts with deliberate indifference only where its response to harassment "is clearly unreasonable in light of the known circumstances." *Davis,* 526 U.S. at 648. This is "not a mere 'reasonableness' standard," but a heightened standard which requires a plaintiff to show the

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA  93101

**NOTICE OF MOTION AND MOTION TO DISMISS**

defendant's conduct was "clearly unreasonable." *Id*. at 649. The deliberate indifference standard is an "exacting standard." *Doe v. Sch. Bd. of Broward County, Fla.* 604 F.3d 1248, 1259 (11th Cir. 2010).

To satisfy this standard, a plaintiff must plead facts to support a finding "that the College made 'an official decision…not to remedy the violation.'" *Oden,* 440 F.3d at 1089, quoting *Gebser,* 524 U.S. at 290; see also *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998) ("Actions and decisions by official that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."). District courts can identify an institution's "response as not 'clearly unreasonable' as a matter of law" and dispose of the claim on a motion to dismiss. *Davis,* 526 U.S. at 649.

Courts finding a university's response to reported sexual harassment to be deliberately indifferent have done so only under facts far more egregious than the present case. For instance, in *Williams v. Bd. of Regents of the Univ. System of Georgia*, 477 F.3d 1282, 1296 (11th Cir. 2007), the court found the allegations were sufficient to withstand a motion to dismiss where the university had knowledge of an athlete's prior sexual misconduct, but nevertheless recruited him to attend the school through a special admissions process, then failed to ensure he was informed of the sexual harassment policy and failed to supervise him, which caused the plaintiff to suffer a sexual assault. Similarly, in *Hill v. Cundiff*, 797 F.3d 948 (11th Cir. 2015), the court found the allegations of deliberate indifference sufficient to withstand a motion to dismiss where the school district effectively used the plaintiff as bait to catch another student who had been accused of sexual assault.

Conversely, courts have held that responses such as the one alleged in the present case do not amount to deliberate indifference. In *Oden, supra,* the Ninth Circuit held a nine-month delay in convening a hearing on the Title IX plaintiff's sexual harassment allegations was insufficient to create a triable issue of fact on deliberate indifference, even where such a delay was contrary to school policy.

1  *Oden,* 440 F.3d at 1089. This is because conduct that is merely "negligent, lazy, or

2  careless," cannot be the basis of Title IX liability. *Id*.

3      Likewise, in *Karasek, supra,* the Ninth Circuit held that an eight and one-half-

4  month delay and a thirteen-month delay did not constitute deliberate indifference.

5  *Karasek,* 956 F.3d at 1106, 1109-1100. In *Karasek,* the Ninth Circuit also found the

6  university's failure to implement protective measures to prevent the possibility the

7  alleged harasser could harass the complainant again after she reported sexual assault

8  did not constitute deliberate indifference. The Court reasoned that although the

9  complainant wanted the male barred from campus during the investigation of her

10  complaint, particularly given that the university was allegedly aware that multiple

11  women reported being sexually assaulted by him, the university's interim

12  disciplinary decisions were not clearly unreasonable, as there was no indication the

13  male ever interacted with the complainant again after the assault. *Id.* at 1109.

14      The court in *Moore v. Regents of the Univ. of Calif.*, 2016 WL 2961984 (N.D.

15  Cal. May 23, 2016), reached a similar conclusion. There, the plaintiff claimed the

16  University was deliberately indifferent because it did not provide her with

17  appropriate accommodations, did not issue a no-contact order causing her to see her

18  assailant on campus, and "discouraged" her from making a Title IX report. The

19  court held that this was not "clearly unreasonable," and thus insufficient to

20  constitute deliberate indifference.

21      Here, like in *Oden, Karasek*, and *Moore*, the facts alleged in the Complaint

22  cannot support a finding of deliberate indifference. The University's response to

23  Plaintiff's reported sexual assault is not clearly unreasonable in light of the known

24  circumstances. To the contrary, the University responded to Plaintiff's report by

25  providing her with the resources available to survivors of sexual assault, helping

26  with the criminal investigation, and performing its own investigation into whether

27  there was a policy violation. These actions are not clearly unreasonable--much less

28  an intentional decision not to remedy the misconduct—and thus cannot support a

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1   finding of liability under Title IX.

2      Plaintiff nevertheless alleges the University acted with deliberate indifference

3   by (1) failing to provide academic and housing accommodations; and (2) concluding

4   the Title IX investigation seven months after the law enforcement hold lifted, an

5   amount of time the Ninth Circuit held did *not* constitute deliberate indifference

6   (*Karasek,* 956 F.3d at 1105 (eight and a half and 13-month delays are reasonable);

7   *Oden*, 440 F.3d at 1085 (nine-month delay is reasonable). (Dkt. 1-1, ¶ 58.) Even in

8   totality, these allegations are insufficient to constitute deliberate indifference.

9          **a.    The allegations related to academic and housing**

10              **accommodations are insufficient to find deliberate**

11              **indifference**

12      Victims of peer harassment do not have a Title IX right "to make particular

13   remedial demands." *Davis,* 526 U.S. at 648. Nevertheless, Plaintiff alleges the

14   University was deliberately indifferent by failing to provide Plaintiff academic and

15   housing accommodations. (Dkt. 1-1, ¶ 58.) This general allegation, without details

16   as to what accommodations Plaintiff requested and was denied, is insufficient to

17   meet the deliberate indifference pleading standard. Plaintiff's allegations fail to

18   demonstrate the University ignored or refused to accommodate Plaintiff.

19      Indeed, Universities have only been held liable under Title IX for refusal to

20   accommodate where the university either ignored a survivor's request for

21   accommodations or outright refused the accommodation. See, e.g., *Kelly v. Yale*

22   *University*, 2003 WL 1563424 (D. Conn. Mar. 26, 2003). Neither allegation has

23   been, nor can be plausibly asserted in the present case as every academic

24   accommodation Plaintiff actually requested was granted by the University. The

25   general allegation to the contrary, with no facts to establish the plausibility, does not

26   demonstrate deliberate indifference.

27   //

28   //

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA  93101

### b.   The University did not unreasonably delay the investigation

Plaintiff next complains the delay from report to conclusion constituted deliberate indifference. The facts here, however, show this was not clearly unreasonable. University policies require the University to coordinate with law enforcement. (RFJN, Ex. 1, at 10-11; *see also*, 34 C.F.R. § 106.45(b)(1)(v) (concurrent law enforcement activity is good cause for delay of investigation.) As Plaintiff acknowledges, there was a law enforcement hold, which means the investigating agency – a third party unrelated to The Regents – requested the University hold its investigation, and the University briefly did so. The law enforcement hold was in place for the first seven months after Plaintiff filed her Title IX complaint form. When Plaintiff requested the University proceed with its investigation despite the pending criminal investigation, the University did so. From there, the investigation took seven months, which occurred during the first year of the pandemic. Seven months is well within the case law on what is considered a reasonable timeframe for investigation. *Karasek,* 956 F.3d at 1105 (eight-and-a-half and 13-month delays are not unreasonable); *Oden,* 440 F.3d at 1085 (nine-month delay is not unreasonable). Thus, Plaintiff's allegations of delay are insufficient to conclude the University acted with deliberate indifference.

### 3.   Plaintiff Has Failed To Adequately Plead Causation Or Additional Harassment

To succeed on a claim of discrimination under Title IX, Plaintiff needs to go further than merely alleging deliberate indifference; she must show the deliberate indifference caused her to undergo additional harassment so severe and pervasive that it deprived her or educational opportunities. *Davis,* 526 U.S. at 645. A plaintiff may satisfy the fifth element by pleading and proving that the deliberate indifference either a) caused him or her to experience further sexual harassment or assault or b) made him or her vulnerable to further harassment or assault within the University's

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA  93101

**NOTICE OF MOTION AND MOTION TO DISMISS**

control. *Id.; Barnett v. Kapla,* 2020 WL 7428321, at *15 (N.D. Cal. Dec. 18, 2020).

Several courts have held a plaintiff who has withdrawn from an educational institution due to a reasonable concern of encountering his or her assaulter can adequately allege the fifth element when the educational institution failed to take adequate steps to protect the plaintiff. *See*, *e.g.*, *Farmer v. Kansas State Univ.*, 918 F.3d 1094, 1103–04 (10th Cir. 2019) (plaintiffs who had withdrawn from various education opportunities due to concerns of encountering assaulters (other students) had adequately alleged fifth element where university had failed to take any steps to keep plaintiff safe), 1105 (collecting similar cases); *Williams*, 477 F.3d at 1297 (plaintiff who had withdrawn from campus due to concerns of encountering assaulters (other students) had adequately alleged fifth element where university had failed to take any steps to keep plaintiff safe); *Takla*, 2015 WL 6755190, at *2, 4–5 (plaintiff who did not go to university's campus due to concerns of encountering harasser (a faculty advisor) had adequately alleged fifth element where university failed to keep plaintiff apprised of the status of its informal complaint resolution process).

But these cases have a critical distinction Plaintiff cannot overcome: there is no authority to support the conclusion that the fear of running into an assailant *off-campus* in a situation outside the University's control constitutes a violation. And with good statutory reason, as Title IX only gives rise to liability if the plaintiff is "excluded from participation in, [is] denied the benefits of, or [is] subjected to discrimination" under any university "education program or activity," 20 U.S.C. § 1681(a).

The allegations here show the University's actions did not cause Plaintiff to suffer additional severe and pervasive harassment *after* her alleged assault and within the statutory period. There are no allegations that Plaintiff ever encountered the respondent again, and certainly not in a situation that was within the University's control, as the respondent has not been a student since March 2020. And even if

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**NOTICE OF MOTION AND MOTION TO DISMISS**

Plaintiff could allege a single incident within the statutory period, no court has held that a single isolated incident of seeing the assailant on campus from a distance amounts to "severe, pervasive, and objectively offensive" harassment. In fact, courts have held the opposite. See *Karasek,* 956 F.3d at 1109; *Ha v. Nw. Univ*, No. 14 C 895, 2014 WL 5893292, at *2 (N.D. Ill. Nov. 13, 2014) (plaintiff's allegation her assailant's "presence on [] campus caused her considerable grief" was not actionable under Title IX when the only interaction she had with him was an "occasional glimpse" on campus); *Tanjaya v. Regents of the Univ. of Cal.,* C.D. Cal. Case 2:19-cv-02956-GW-FFM, Dkt. 56, p. 10 (Judge Wu holding that the plaintiff did not adequately plead the university caused her to suffer further harassment where Plaintiff encountered the assailant twice at on campus facilities).

Plaintiff does not allege that she was "excluded from participation in, denied the benefits of, or subjected to discrimination" under any university "education program or activity," because of further harassment she suffered that was *caused by* the University's response. 20 U.S.C. § 1681(a). The general allegations of inability to access educational opportunities are insufficient to demonstrate the post-assault harassment had a "concrete, negative effect" on her education or access to school-related resources. *Davis,* 526 U.S. at 650; see also *id.* at 654. In short, there was no additional harassment, there was no additional harassment that occurred in a context under the University's control, and there was no additional harassment that occurred in a context under the University's control that occurred in the limitations period. The Court must dismiss the Title IX claim.

### E.   <u>Plaintiff Fails to State A Claim for Violation of Educ. Code § 220.</u>

Plaintiff asserts a claim for damages against The Regents pursuant to California Education Code, § 220. Section 220 provides: "[n]o person shall be subjected to discrimination on the basis of ... sexual orientation ... in any program or activity conducted by an educational institution that receives, or benefits from, state financial assistance or enrolls pupils who receive state student financial aid." Cal.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

Educ. Code § 220. The Court should dismiss this claim (1) because section 220 does not apply to postsecondary institutions such as the University, (2) because section 220 has an administrative exhaustion requirement which has not been met, and (3) for the same reasons discussed above with respect to Plaintiff's Title IX claims.

The first basis to dismiss looks to the statutory language itself. Section 220 applies only to "educational institution[s]," and Section 210.3 defines "educational institution" as "a public or private preschool, elementary, or secondary school or institution; the governing board of a school district; or any combination of school districts or counties recognized as the administrative agency for public elementary or secondary schools." Cal. Educ. Code § 210.3. The University is a "postsecondary" school or institution, not a "secondary" one, and thus section 220 does not apply to it. *Karasek,* 2015 WL 8527338, at * 18 ("section 220 does not apply to a postsecondary institution such as the University"); see also, Education Code § 66261.5, *et seq*., distinguishing between "secondary" and "postsecondary" as used in the Education Code). Thus, Section 220 does not apply to The Regents.

The second basis to dismiss the Section 220 claim again looks to the statutory language and intent. Education Code § 262.3 imposes an administrative exhaustion requirement on those looking to file a civil lawsuit for a violation of the chapter. Specifically, "a person who alleges that he or she is a victim of discrimination may not seek civil remedies pursuant to this section until at least 60 days have elapsed from the filing of an appeal to the State Department of Education pursuant to Chapter 5.1 (commencing with Section 4600) of Division 1 of Title 5 of the California Code of Regulations." Plaintiff has failed to allege she exhausted her administrative remedies. Even if this statute applied to The Regents, Plaintiff's failure to exhaust administrative remedies is fatal to this cause of action. *Paul G. v. Monterey Peninsula Unified Sch. Dist.*, 933 F.3d 1096, 1100 (9th Cir. 2019).

The final basis relies on the same analysis set forth above with respect to Plaintiff's Title IX claim. The elements for demonstrating a claim under Section 220

Nye, Stirling, Hale & Miller
33 West Mission Street, Suite 201
Santa Barbara, California 93101

31

1   mirror those for a claim under Title IX. *Walsh v. Tehachapi Unified Sch. Dist.,* 827

2   F.Supp.2d 1107, 1124 (E.D. Cal. 2011), citing *Donovan v. Poway Unified Sch.*

3   *Dist.*, 167 Cal.App.4th 567, 603–09 (2008). Accordingly, for the same reasons

4   discussed in the analysis of Plaintiff's Title IX claim, Plaintiff's Education Code §

5   220 must be dismissed.

6       **F.    Plaintiff's Claim for Emotional Distress Damages Must Be**

7   **Dismissed**

8       Plaintiff seeks to recover damages that are unavailable under Title IX.

9   Specifically, paragraph 61 and the prayer for relief, paragraph 2, requests general

10  damages for mental and emotional distress. (Dkt. 1-1.) Even if Plaintiff is given

11  leave to cure the defects in the pleading discussed above, the damages must be

12  dismissed with prejudice pursuant to Supreme Court precedent.

13      On April 28, 2022, the Supreme Court ruled that "[e]motional distress

14  damages are not recoverable in a private action to enforce either the Rehabilitation

15  Act of 1973 or the Affordable Care Act." *Cummings,* 142 S.Ct. at 1565. Since those

16  statutes were enacted under the Spending Clause, federal funding recipients who

17  could potentially be held liable must have clear notice of the particular type(s) of

18  damages available. *Ibid.* That is not the case for emotional distress damages, as they

19  are not traditionally available in suits for breach of contract. *Id.* at 1567. The

20  Supreme Court's ruling extends to Title IX claims, as it is one of the four federal

21  anti-discrimination statutes enacted pursuant to the Spending Clause. *Id.* at 1569-70,

22  1577-78; *Davis,* 526 U.S. at 640 ("[W]e have repeatedly treated Title IX as

23  legislation enacted pursuant to Congress' authority under the Spending Clause….").

24  Plaintiff therefore cannot recover emotional distress damages under Title IX, as a

25  matter of law.

26  **IV.    CONCLUSION**

27      For the forgoing reasons, the court should dismiss Plaintiff's Complaint.

28  Dismissal with prejudice is appropriate because Plaintiff is incapable of pleading

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

32

facts establishing a plausible entitlement to relief on any of her claims. See *Lopez v. Smith*, 203 F.3d 1122, 1129-30 (9th Cir. 2000).

Dated: June 9, 2022

NYE, STIRLING, HALE & MILLER, LLP

By: _____

Jonathan D. Miller, Esq.
Alison M. Bernal, Esq.
Attorneys for Defendant, REGENTS OF THE UNIVERSITY OF CALIFORNIA