Jonathan D. Miller (SBN 220848)
jonathan@nshmlaw.com
Alison M. Bernal (SBN 264629)
alison@nshmlaw.com
NYE, STIRLING, HALE & MILLER, LLP
33 West Mission Street, Suite 201
Santa Barbara, California 93101
Telephone: (805) 963-2345
Facsimile: (805) 284-9590

Attorneys for Defendant, The Regents of the
University of California

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TANIA P., an individual,<br><br>Plaintiff<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA; and DOES 1-10, Inclusive.<br><br>Defendants. | CASE NO.: 2:22-cv-02959-GW-MRW<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>[*Concurrently filed with Local Rule 7-3 Declaration; Request for Judicial Notice; [Proposed] Order*]<br><br>DATE: November 17, 2022<br>TIME: 8:30 a.m.<br>CRTRM: 9D |

*NYE, STIRLING, HALE & MILLER*
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on November 17, 2022, at 8:30 a.m. in the courtroom of the Honorable George H. Wu, United States District Court for the Central District of California, located 350 West First Street, Courtroom 9D, Los Angeles, CA 90012, Defendant The Regents of the University of California will, and hereby does, move to dismiss Plaintiff's First Amended Complaint ["FAC,"

Dkt. 20] with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).[1] This motion is made following meet and confer efforts with counsel pursuant to Local Rule 7-3, which occurred on August 29, 2022. *See,* Declaration of Alison Bernal.

Plaintiff's original complaint was for gender discrimination in violation of Title IX and the companion state law claim, Education Code § 200, *et seq*. Following an initial motion to dismiss, Plaintiff was given leave to amend to add only a claim for violation of California's Unruh Act. Plaintiff well exceeded the scope of the Court's order allowing leave to amend, adding new claims for (1) retaliation in violation of Title IX, (2) violation of the Americans with Disabilities Act ("ADA"), (3) violation of Section 504 of the Rehabilitation Act ("Section 504"), and, the only claim allowed by the Court, (4) violation of the Unruh Act. Even if properly within the scope of the Court's order, each cause of action fails pursuant to Federal Rule of Procedure, Rule 12, for the following reasons:

1.     The Title IX pre-assault, post-assault and retaliation claims are barred by the applicable two-year statute of limitations. The allegations show the assault occurred in May 2018 and Plaintiff reported it to the University in June 2019. Plaintiff did not file this complaint until February 16, 2022.

2.     Plaintiff has failed to state a cause of action for violation of the ADA.

3.     Plaintiff has failed to state a cause of action for violation of Section 504 of the Rehabilitation Act ("Section 504").

4.     The Regents is not a business establishment subject to the Unruh Act. *Brennon B. v. Superior Court,* 13 Cal.5th 662, 513 P.3d 971, 984-85 (2022).

5.     Plaintiff violated Rule 15 in alleging new claims not based on the same injury in fact by bringing claims under the ADA and Section 504, based on alleged

---

[1] While motions to strike are generally governed by Rule 23(f), *Whittlestone, Inc., v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010), states that motions to strike damages are subject to a Rule 12(b)(6) motion. To the extent this Court disagrees, Defendant alternatively raises the motion to strike certain damages under Rule 12(f).

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

discrimination on the basis of disability.

     6.    Plaintiff may not recover emotional distress damages under Title IX, the ADA, or Section 504, and thus the prayer for relief must be stricken to the extent it requests emotional distress damages.

     This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Request for Judicial Notice, the documents on file with the Court, and such further evidence and argument as the Court may permit.

Dated: September 16, 2022      Respectfully submitted,

NYE, STIRLING, HALE & MILLER, LLP

By: _/s/ Jonathan D. Miller_
Jonathan D. Miller, Esq.
Alison Bernal, Esq.
Attorney for Defendants, THE REGENTS OF THE UNIVERSITY OF CALIFORNIA

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

3
**NOTICE OF MOTION AND MOTION TO DISMISS**

# TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES** .................................................. **8**

**I.     INTRODUCTION** ................................................................. **8**

**II.    RELEVANT FACTUAL BACKGROUND** ............................................ **11**

    **A.     University Policies on Sexual Assault** ...................................... **12**

    **B.     The May 20, 2018, Incident and Investigation** ............................ **12**

**III.   ARGUMENT** .................................................................. **14**

    **A.     Legal Standard On Motion To Dismiss** ...................................... **14**

    **B.     Plaintiff's Title IX Pre-Assault Claims Is Untimely** .................... **15**

        **1.     The Pre-Assault Claim Is Time-Barred** ............................ **16**

    **C.     The Post-Assault Claim Is Time-Barred And Lacks Specific Allegations of University Control** .................................................... **18**

        **1.     Additional encounters with the assailant (¶¶ 25-28)** ............ **18**

        **2.     Sorority harassment (¶¶ 36-44)** .................................. **19**

            **a.     The vague allegations of denial of housing and academic accommodations are not "further harassment" that triggers Title IX liability** ...................................... **20**

        **3.     The Title IX-Retaliation Claim Fails** ............................ **21**

    **D.     The ADA Claim Fails On Multiple Bases** .................................... **24**

    **E.     Plaintiff's Section 504 Claim Fails for Multiple Reasons** ............... **26**

    **F.     The Unruh Act Does Not Apply to The Regents** ............................ **27**

    **G.     Plaintiff's Claim for Emotional Distress Damages Must Be Dismissed** .... **27**

    **H.     The FAC Fails in Its Entirety for Exceeding the Scope of The Court's Order** ..................................................................... **28**

**IV.    CONCLUSION** ................................................................. **29**

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*A.T. v. Everett School District,*
  300 F. Supp. 3d 1243, 1258 (W.D. Wash. 2018) ........................................................ 17

*Ashcroft v. Iqbal,*
  556 U.S. 662, 678 (2009)............................................................................................. 15

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544, 555, 557 (2007)..................................................................................... 15

*Bowling v. Holt Pub. Sch.,*
  2017 WL 4512587, at *1–2 (W.D. Mich. May 26, 2017) ........................................... 17

*Brennon B. v. Superior Court,*
  13 Cal.5th 662, 513 P.3d 971, 984-85 (2022) ...........................................2, 11, 27

*Brown v. State,*
  23 F.4th 1173, 1179 (9th Cir. 2022) ..................................................................... 18, 19

*Burton v. City of Pasadena,*
  2015 WL 470373 at *5 (C.D. Cal. Feb. 4, 2015) ....................................................... 24

*Carten v. Kent,* 78 Fed.Appx. 499 (6th Cir. 2003) ......................................................... 10

*Clark County School Dist. v. Breeden,*
  532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)........................ 10, 23

*Csutoras v. Paradise High Sch.,*
  12 F.4th 960, 969 (9th Cir. 2021) ............................................................................... 25

*Cummings v. Premier Rehab Keller,*
  142 S.Ct. 1562 (2022)............................................................................................ 11, 28

*Davis v. Monroe County Bd. of Ed.,*
  526 U.S. 629 (1999).........................................................................16, 19, 21, 28

*Doe 1 v. Curators of Univ. of Missouri,*
  2022 WL 3366765, at *3 (W.D. Mo. Aug. 15, 2022) ................................................ 28

*Doe v. Bd. Of Regents of Univ. of Nebraska,*
  2022 WL 3566990, at *4 (D. Neb. Aug. 18, 2022) .................................................... 28

*Doe v. Univ. of S. California,*
  2019 WL 4229750, at *3 (C.D. Cal. July 9, 2019)..........................................8, 15, 17

*Douglas v. California Dept. of Youth Authority,*
  271 F.3d 812, 823 n. 11 (9th Cir. 2001) ............................................................... 10, 27

*Duvall v. County of Kitsap,*
  260 F.3d 1124, 1135 (9th Cir. 2001) ........................................................................... 24

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**NOTICE OF MOTION AND MOTION TO DISMISS**

*Girard v. Lincoln Coll. of New England*,
   27 F.Supp.3d 289, 294 (D.Conn.2014) ........................................................... 26

*Ileto v. Glock Inc.*,
   349 F.3d 1191, 1199-1200 (9th Cir. 2003) ..................................................... 15

*Jackson v. Birmingham Board of Education*,
   544 U.S. 167, 174 (2005) ................................................................................ 21

*Lei Ke v. Drexel Univ.*,
   No. CIV.A. 11–6708, 2013 WL 5508672, at *4 (E.D.Pa. Oct. 4, 2013) ............... 25

*Lopez v. Regents of the Univ. of Calif.*,
   5 F.Supp.3d 1106, 1123-24 (N.D. Cal. 2013) ................................................. 20

*Lopez v. Smith*,
   203 F.3d 1122, 1129-30 (9th Cir. 2000) ........................................................ 29

*Lucas v. Dep't of Corr.*,
   66 F.3d 245, 248 (9th Cir. 1995) .................................................................... 15

*Lukovsky v. City & Cty. of San Francisco*,
   535 F.3d 1044, 1048 (9th Cir. 2008) .............................................................. 16

*Manatt v. Bank of Am., N.A.*,
   339 F.3d 792, 801 (9th Cir. 2003) ............................................................. 10, 23

*Moore v. Regents of the Univ. of Calif.*,
   2016 WL 7048991, at *3 (N.D. Cal., Dec. 5, 2016) ...................................... 11, 29

*Ollier v. Sweetwater Union High School Dist.*,
   858 F.Supp.2d 1093, 1113 (S.D. Cal. 2012) ................................................ 9, 23

*Patton v. Phoenix Sch. of Law LLC*,
   No. CV–11–0748–PHX–GMS, 2011 WL 1936920, at *4 (D.Ariz. May 20, 2011) ............... 25

*Pierce v. County of Orange*,
   526 F.3d 1190, 1217 (9th Cir. 2008) .............................................................. 25

*R.K., ex rel. T.K. v. Hayward Unified School Dist.*,
   2007 WL 2778730, *9 (N.D. Cal. Sep. 21, 2007) ......................................... 10, 27

*Rivera–Concepcion v. Puerto Rico*,
   786 F.Supp.2d 442, 454–55 (D.P.R.2010) ...................................................... 25

*Shatford v. Los Angeles County Sheriff's Dep't.*,
   2016 WL 1579379 at *9 (C.D. Cal, Mar. 29, 2016) ........................................ 26

*Sherman v. Regents of the Univ. of Calif.*,
   2022 WL 1137090, at *12-13 (N.D. Cal. Apr. 18, 2022) .................................. 22

*Stanley v. Trustees of CSU*,
   433 F.3d 1129 (9th Cir. 2006) ...................................................................... 8, 15

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**NOTICE OF MOTION AND MOTION TO DISMISS**

*Starr v. Baca*,
  652 F.3d 1202, 1216 (9th Cir. 2011) .......................................................... 15

*Stearns v. Bd. of Educ. for Warren Twp. High Sch. Dist.*
  *# 121*, No. 99 C 5818, 1999 WL 1044832, at *3 (N.D.Ill. Nov. 16, 1999) ............ 26

*Talevski v. Regents of the Univ. of Calif.*,
  2013 WL 4102202, at *4 (S.D. Cal., Aug. 13, 2013) ....................................... 11, 27

*Tanjaya v. Regents of the Univ. of Cal.*,
  830 F. App'x 526, 527 (9th Cir. Nov. 30, 2020) ............................................. 22

*Tanjaya v. Regents of the Univ. of Cal.*,
  C.D. Cal. Case 2:19-cv-02956-GW-FFM, Dkt. 56, p. 10, aff'd 830 F. App'x 526,
  527 (9th Cir. 2020) ............................................................................. 20

*Thomsen v. City College of San Francisco*,
  2008 WL 5000221, at * 3 (N.D. Cal. 2008) ................................................... 22

*Twersky v. Yeshiva University*,
  993 F. Supp. 2d 429, 439 (S.D.N.Y. 2014) ................................................... 17

*Weinreich v. Los Angeles County Metropolitan Transp. Authority*,
  114 F.3d 976, 978-979 (9th Cir. 1997) ........................................................ 26

*Zukle v. Regents of the Univ. of Calif.*,
  166 F.3d 1041, 1045 (9th Cir. 1999) ........................................................... 11

**Rules**

Federal Rule of Civil Procedure Rule 12(b)(6) ................................................... 14

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**NOTICE OF MOTION AND MOTION TO DISMISS**

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

This is Plaintiff Tania P.'s ("Plaintiff") second attempt to plead a viable claim from an alleged assault that occurred four and a half years ago. In response to the complaint, The Regents of the University of California ("The Regents" or "the University") investigated the allegations (Dkt. 20, ¶ 46), assigned a confidential CARE advocate to support Plaintiff in connecting with resources (*id.,* ¶ 49), and ultimately sustained the findings against the respondent (*id.,* ¶ 58). In offering Plaintiff an opportunity to amend, the Court highlighted what it viewed as the deficiencies in the pleading, including that it failed to plead facts to show the injury fell within Title IX's two-year statute of limitations under either a pre- or post-assault theory. The Court allowed Plaintiff leave to fix these deficiencies, if she plausibly could, and to add one new claim, under California's Unruh Act.

Perhaps recognizing her inability to plausibly show her Title IX claims are not time-barred, Plaintiff instead far exceeded the scope of the Court's order by adding many new claims not previously alleged. While the Court instructed Plaintiff to amend to show what further harassment from the perpetrator she suffered in the two years preceding her lawsuit, if any, Plaintiff decided instead to change the theory of discrimination, adding new claims that The Regents discriminated against her based on her purported disability in violation of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504"). The new claims, like the old, fail on many procedural and substantive grounds.

*First,* each of the Title IX claims – pre-assault, post-assault, and retaliation— are untimely. The statute of limitations period for Title IX is borrowed from the state's personal injury statute, which, under California law, is two years. *Doe v. Univ. of S. California*, 2019 WL 4229750, at *3 (C.D. Cal. July 9, 2019); *Stanley v. Trustees of CSU*, 433 F.3d 1129 (9th Cir. 2006) (analyzing under prior one-year statute for personal injury cases). Plaintiff filed her complaint on February 16, 2022,

**NOTICE OF MOTION AND MOTION TO DISMISS**

and thus, to be timely, the Title IX claim must have accrued on or after February 16, 2020. Each of the Title IX theories – pre-assault, post-assault, and retaliation – accrued before February 16, 2020.

For a pre-assault theory, the "injury" which triggers the statute of limitations is the assault. Plaintiff's assault was May 20, 2018. (Dkt. 20, ¶ 11.) As this Court acknowledged, "certainly at the time she was assaulted, which was on May 20th of 2018, she was aware of her injury, which was the assault." (Dkt. 23, 6:1-3.) Thus, the pre-assault claim is time-barred.

For a post-assault theory, the "injury" is the further harassment caused by the University's deliberate indifference. Plaintiff contends she saw the assailant multiple times on campus after the assault (Dkt. 20, ¶¶ 26-27), but she never alleges when she saw him. This makes it impossible to determine whether any of these alleged incidents occurred after February 16, 2020. And besides, by that point in time, the assailant had graduated, and the University had moved to remote instruction shortly afterwards, on March 10, 2020. (RFJN, Ex. 3.) Accordingly, the complaint fails to plausibly allege sufficient facts to support a timely post-assault claim.

For a retaliation theory, the "injury" is the adverse action taken by the funding recipient itself (the University)[2] that is causally related to the Plaintiff's protected activity. *Ollier v. Sweetwater Union High School Dist.,* 858 F.Supp.2d 1093, 1113 (S.D. Cal. 2012). The protected activity here is the June 28, 2019, report to Title IX, and the adverse action, if any, is the denial of educational benefits because of Plaintiff's report of gender discrimination under Title IX. Plaintiff has not pled with any specificity that University had notice of retaliation, responded to that notice with deliberate indifference – i.e., clearly unreasonably, which then caused Plaintiff

---

[2] Because a Title IX retaliation claim requires the funding recipient itself retaliate against Plaintiff, the allegations relating to alleged retaliation from the sorority sisters does not fit within this claim, as those are third parties not the University itself.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

9

to suffer additional retaliation by the funding recipient itself – the University (not third parties). Nor would any retaliatory actions taken from February 16, 2020, to present come anywhere close to meeting the temporal proximity required to sustain a retaliation claim, as that is eight months after the protected activity. *See Clark County School Dist. v. Breeden,* 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam) (citing cases finding a three-month period and a four-month period too long to be considered temporal proximity for retaliation); *Manatt v. Bank of Am., N.A.,* 339 F.3d 792, 801 (9th Cir. 2003) ("nine months" between a plaintiff's complaint and the adverse decision was too long to satisfy the causation prong.). Here, all allegations of adverse actions that could possibly be timely – i.e., occurring after February 16, 2020, would necessarily not meet the causation required for Title IX retaliation as they occurred eight months post-complaint and are thus not temporally proximate as a matter of law. Thus, the Title IX retaliation claim is not timely.

*Second,* Plaintiff's claim for ADA violation fails because Plaintiff does not plausibly allege she requested a specific education accommodation, which The Regents denied, nor that The Regents discriminated against Plaintiff *solely* based on her purported disability. *Carten v. Kent,* 78 Fed.Appx. 499 (6th Cir. 2003).

*Third,* Plaintiff's claim for violation of Section 504 of the Rehabilitation Act fails because it cannot be determined from the allegations in the complaint if Plaintiff specifically requested an academic accommodation, which the University denied, within the two-year statute of limitations. *Douglas v. California Dept. of Youth Authority,* 271 F.3d 812, 823 n. 11 (9th Cir. 2001) (analyzing under California's previous one-year personal injury statute of limitations). Further, a Section 504 claim in the special education setting requires Plaintiff to plead she was "denied benefits or services, or otherwise subject to discrimination, *solely* because of [her] disability." *R.K., ex rel. T.K. v. Hayward Unified School Dist*., 2007 WL 2778730, *9 (N.D. Cal. Sep. 21, 2007) (emphasis added); citing *Zukle v. Regents of*

1    *the Univ. of Calif.*, 166 F.3d 1041, 1045 (9th Cir. 1999).

2        *Fourth,* Plaintiff's claim for violation of the Unruh Act is both barred by

3    Eleventh Amendment immunity (*Talevski v. Regents of the Univ. of Calif.,* 2013 WL

4    4102202, at *4 (S.D. Cal., Aug. 13, 2013)) and because The Regents is not a

5    business establishment subject to the Unruh Act. *Brennon B. v. Superior Court,* 13

6    Cal.5th 662, 513 P.3d 971, 984-85 (2022).

7        *Fifth*, the prayer for relief requests damages that are not available on

8    Plaintiff's Title IX and Section 504 claims. *Cummings v. Premier Rehab Keller*, 142

9    S.Ct. 1562 (2022). The prayer for general damages and reference to emotional

10   distress damages is not allowable, and thus must be dismissed.

11       *Sixth,* the new claims for violations of the ADA, Rehabilitation Act, and Title

12   IX-retaliation, exceed this Court's grant of leave to amend. The Court allowed leave

13   to amend to address the issues raised as to timeliness of the Title IX-discrimination

14   claim, and to add a singular new cause of action- for violation of the Unruh Act.

15   (Dkt. 23, 4:16-18, 11:2-3.) Plaintiff far exceeded the leave the Court granted. These

16   three causes of action – Title IX-retaliation, ADA violation, and Section 504

17   violation – must be dismissed for this reason alone. *Moore v. Regents of the Univ. of*

18   *Calif.,* 2016 WL 7048991, at *3 (N.D. Cal., Dec. 5, 2016).

19       At bottom, the University followed its procedures and state and federal law

20   when investigating Plaintiff's reported assault. Thus, Plaintiff has failed to

21   adequately plead gender or disability discrimination under any state or federal

22   statute. For these reasons, and as more fully explained below, the University

23   requests the Court grant its motion to dismiss.

24   **II.    RELEVANT FACTUAL BACKGROUND**

25       In ruling on a motion to dismiss, the Court must accept all facts alleged in the

26   complaint as true, together with those facts which may be judicially noticed. While

27   The Regents disputes Plaintiff's version of facts set forth in the FAC, they are

28   addressed as set forth by Plaintiff solely for purposes of this motion.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**NOTICE OF MOTION AND MOTION TO DISMISS**

### A.   <u>University Policies on Sexual Assault</u>

The University has established policies on investigating and disciplining cases of sexual assault alleged against students, which are publicly available on the University's website. (RFJN, Ex. 1.) As is relevant here, the policies provide that when the University receives a report of an alleged assault, the University will provide the survivor with resources, including a CARE advocate to provide confidential assistance. (*Id.*, at 9.) The advocate's assistance may include reporting the assault if the survivor feels comfortable doing so, helping the survivor obtain a "no contact" order, coordinating requests for academic or housing assistance, and general assistance throughout the process. (*Id.*, at 9-10.)

The policies also outline the options a survivor has when choosing whether to report an assault, including a report to law enforcement, a report to the University's Title IX office, or both. (*Id.*, at 10-11.) If the survivor reports to law enforcement, the Title IX investigation may be delayed at the request of the investigating agency. (*Id.*) The policies set forth the procedure the University will use when investigating and adjudicating a claim of sexual assault reported to the Title IX office, which provide the survivor with access to resources, while accounting for the due process rights available to respondents. (*Id.*, at 13-22.) At the conclusion of a Title IX investigation, Title IX provides its preliminary determinations. (*Id.* at 20.)

If either party contests the Title IX investigator's preliminary determinations, there will be a factfinding hearing before a hearing officer. The hearing is to determine whether a violation of the SVSH Policy occurred. The University's role in the hearing is neutral. (*Id.*, at 28.)

### B.   <u>The May 20, 2018, Incident and Investigation</u>

Plaintiff was a student at the University. (Dkt. 20, ¶ 10.) On May 20, 2018, Plaintiff alleges another student assaulted her at an off-campus fraternity house. (*Id.*, at ¶¶ 11, 14.) Plaintiff does not allege the other student was a member of a fraternity, nor could she, as the student was not a member of the fraternity.

**NOTICE OF MOTION AND MOTION TO DISMISS**

1    Plaintiff reported the incident to the Santa Barbara County Sheriff's

2    Department and the University Title IX office over a year later, on June 28, 2019,

3    completing the Title IX complaint form on July 22, 2019. (*Id.,* at ¶¶ 22-23.) The

4    Sheriff's Department requested the Title IX office hold its investigation to avoid

5    impacting the criminal investigation. (*Id.*, at ¶ 34, RFJN, Ex. 1, at pp. 6-7.) Plaintiff

6    alleges she did not authorize the law enforcement hold. (Dkt. 20, at ¶ 31.) In this

7    case, Plaintiff requested Title IX begin its investigation despite the Sheriff's

8    requested hold, and when Plaintiff made that request, Title IX accommodated her,

9    beginning its investigation on February 25, 2020. (Dkt. 20, at ¶ 29.)

10    The Title IX investigator interviewed several witnesses who were at the off-

11    campus residence on the night of the alleged assault and observed Plaintiff and the

12    respondent. The Title IX investigator, who the policies charge with making

13    credibility determinations as to the witnesses and parties, determined the

14    preponderance of evidence did not substantiate the allegation that the respondent

15    engaged in sexual assault-penetration against the Complainant. Plaintiff contends

16    Title IX's November 2, 2020, report is "false and inaccurate" because it failed to

17    substantiate Plaintiff's complaint of sexual assault (something the law enforcement

18    investigation also failed to substantiate). (Dkt. 20, ¶ 53.)

19    Plaintiff thereafter followed the University procedures in place to challenge

20    Title IX's preliminary findings. (Dkt. 20, ¶ 58.) At the conclusion of the hearing,

21    where the witnesses who had previously participated in the Title IX investigation

22    declined to participate because of retaliation from their prior interviews, the hearing

23    officer reversed the preliminary finding and determined the preponderance of

24    evidence substantiated the allegation that Plaintiff was too incapacitated to consent.

25    (*Id.*)

26    Based on the above facts, The Regents moved to dismiss Plaintiff's initial

27    complaint, arguing, among other things, the claims were barred by the statute of

28    limitations. (Dkt. 13.) On July 28, 2022, the Court heard arguments, and granted the

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA  93101

13

**NOTICE OF MOTION AND MOTION TO DISMISS**

motion with leave to amend. At the hearing, the Court stated its assessment that the issue with the complaint was the statute of limitations, as "certainly at the time she was assaulted, which was May 20th of 2018, she was aware of her injury, which was the assault." (Dkt. 23, 6:2-3). While Plaintiff's counsel disagreed as to when the statute of limitations accrued, she did agree in part with the Court's analysis, stating: "I would agree with Your Honor that the facts can be stated in a much clearer way and I think with a better timeline to show when the plaintiff, you know, encountered her assailant both on and off campus. And then we would like leave to amend to add a different cause of action under the same facts that are at issue for discrimination under the [Unruh] Civil Rights Act." (Dkt. 23, 4:12-18.) The Court did grant this leave, stating: "I will grant the motion to dismiss, but with leave to amend, and as I have indicated, I will also allow the plaintiff to include a cause of action that was not initially included in the original complaint." (Dkt. 23, 10:25-11:3.)

In her amended complaint, Plaintiff now alleges she saw her assailant "on campus numerous times," but does not provide dates of when she saw him. (Dkt. 20, ¶¶ 25-28.) Plaintiff also contends her former sorority sisters harassed her as a result of her reporting the assault, but that alleged harassment occurred off campus, in Isla Vita. (*Id.* at ¶¶ 38-40, 63.) She then alleged an entirely new set of facts, based on purported disability discrimination. The Regents now move to dismiss this amended complaint, as set forth below.

## III.    ARGUMENT

### A.    Legal Standard On Motion To Dismiss

A motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6)[3] requires the Court to determine whether the plaintiff has pled a cognizable claim in

---

[3] While motions to strike are generally governed by Rule 12(f), *Whittlestone, Inc., v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010), states that motions to strike damages are subject to a Rule 12(b)(6) motion. To the extent this Court disagrees, Defendant alternatively raises the motion to strike certain damages under Rule 12(f).

**NOTICE OF MOTION AND MOTION TO DISMISS**

Nye, Stirling, Hale & Miller
33 West Mission Street, Suite 201
Santa Barbara, California 93101

the complaint. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). To survive a motion to dismiss, a complaint must plead sufficient factual matter to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The emphasis is on factual pleadings, as a pleading that offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement" will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007). "[T]he factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

If a claim for relief cannot be cured by amendment, it should be dismissed without affording leave to amend. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

### B.   Plaintiff's Title IX Pre-Assault Claims Is Untimely

Title IX claims brought in California are governed by California's two-year limitations period for personal injury actions. *Doe*, 2019 WL 4229750, at *3 (citing *Stanley,* 433 F.3d at 1136).

To be timely, a plaintiff therefore must bring a claim within two years after the claim accrues. While state law governs the length of the limitations period, federal law "governs the determination of the point at which the limitations period begins to run." *Stanley,* 433 F.3d at 1136. Under federal law, the "touchstone for determining the commencement of the limitations period is notice: a cause of action generally accrues when a plaintiff knows or has reason to know of the injury which is the basis of his action." *Stanley*, 433 F.3d at 1136 (internal quotations omitted).

Plaintiff filed her complaint on February 16, 2022, and thus, to be timely, the claim must have accrued on or after February 16, 2020. On its face, the FAC does not meet this timeline.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

15

A Title IX claim accrues—and the limitations period begins to run—"when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Lukovsky v. City & Cty. of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008). Knowledge of the "injury," the Ninth Circuit has explained, means knowledge of the "actual injury," not when the plaintiff "suspects a legal wrong." *Id.* at 1049–51. The court has often reiterated that a plaintiff does not need to know that she possesses a legal cause of action, she must simply be aware of the actual injury. *See id.*

### 1.     The Pre-Assault Claim Is Time-Barred

In the Title IX context, the injury which is the basis of the action is the additional harassment caused by the University's alleged deliberate indifference. *Davis v. Monroe County Bd. of Ed.*, 526 U.S. 629 (1999), 645-650. For the pre-assault claim to succeed, Plaintiff would need to establish the University's deliberate indifference to prior reports of assault *caused* Plaintiff's assault. Here, Plaintiff argues that the University ignored prior claims of misconduct at the fraternity, and that the University "failed to take reasonable measures that could have prevented Plaintiff's [sexual assault]." (Dkt. 20, ¶ 75.) The claim thus accrued at the time of the injury giving rise to the claim: her assault, which occurred on May 20, 2018. (Dkt. 20, at ¶ 11.) But Plaintiff did not file her complaint until nearly four years later, on February 16, 2022—this was nearly two years too late. (Dkt. 1-1.) Plaintiff's pre-assault claims are therefore untimely.

Applying these principles, courts have repeatedly held that a plaintiff need not know she has a plausible legal claim for damages for claims to accrue; the claims accrue on the date of the harm, even if the plaintiff does not fully understand her legal claims until later. For example, in *Lukovsky*, the court considered accrual of a claim for discriminatory hiring practices. The "question" for purposes of accrual was "what must the plaintiffs 'discover'—that there has been an adverse action, or that the employer acted with discriminatory intent in performing the act?" 535 F.3d

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

at 1048. The court held that the former controlled, and the claim accrued when the individuals "received notice they would not be hired, . . . even if at that point in time [they] did not know of the legal injury, i.e., that there was an allegedly discriminatory motive underlying the failure to hire." *Id*. at 1051.

*Twersky v. Yeshiva University*, 993 F. Supp. 2d 429, 439 (S.D.N.Y. 2014), reached a similar result. There, plaintiffs argued their Title IX claim did not accrue "until [the school president] admitted" that he "had been aware of the risk of sexual abuse at [the school]." Before that point, plaintiffs argued they "were unaware that the school defendants had injured them." *Id*. at 440. The court rejected that argument, explaining: "[d]iscovery of injury [at the time of the abuse] is what starts the clock, regardless of how complex or difficult to discover the elements of the cause of action may be." *Id*.; *see also Varnell v. Dora Consol. Sch. Dist*. 2013 WL 12146483, at *7 (D.N.M. May 13, 2013) (claim for "failure to prevent" abuse accrued at time of abuse); *Bowling v. Holt Pub. Sch*., 2017 WL 4512587, at *1–2 (W.D. Mich. May 26, 2017) (claim for "failing to protect" from assault accrued at time of assault); *A.T. v. Everett School District*, 300 F. Supp. 3d 1243, 1258 (W.D. Wash. 2018) (claim accrued once plaintiff knew she had been harmed); *Doe,* 2019 WL 4229750. As Judge Wilson explained in *Doe*:

> Even if Plaintiff generally did not learn until recently about USC's alleged deliberate indifference spanning over approximately thirty years, Plaintiff's understanding of her injury at the time of her examination by Dr. Tyndall means that the statute of limitations period began to run immediately following the examination. To illustrate, Plaintiff does not argue that Dr. Tyndall's behavior during Plaintiff's examination in 1991 was of no consequence; Plaintiff acknowledges that she knew Dr. Tyndall's examination was abnormal at the time it occurred. Instead, Plaintiff merely argues that Dr. Tyndall's behavior was of lesser consequence to Plaintiff until she read the Los Angeles Times article fully exposing Dr. Tyndall to the public. But this position reflects Plaintiff's focus upon "the time at which the consequences of the acts became most painful," <u>Stanley</u>, 433 F.3d at 1136 (internal quotation marks and citation omitted), not the time at which the alleged discriminatory acts by USC and Dr. Tyndall occurred.

2019 WL 4229750, at *4. Thus, in *Doe,* the Court dismissed the Title IX claim with prejudice where the plaintiff alleged she was unaware of the school's policy of

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

17

1    deliberate indifference until she read an article about Dr. Tyndall decades later.

2    **C.      The Post-Assault Claim Is Time-Barred And Lacks Specific**
3    **Allegations of University Control**

     Under the same logic, Plaintiff's post-assault claim is both time-barred and

4    lacks specific allegations of University control of the context of the further

5    harassment. To prevail on a post-assault claim, Plaintiff must show (among other

6    things) that the University received notice of harassment, acted with deliberate

7    indifference, and that the University's deliberate indifference "subject[ed the

8    plaintiff] to harassment." *Brown v. State,* 23 F.4th 1173, 1179 (9th Cir. 2022).

9    Again, the additional harassment is the "actual injury" that causes the claim to

10   accrue.

11        Here, the FAC alleges Plaintiff was assaulted in May 2018, she reported to

12   the University June 28, 2019, and that the University responded to that complaint

13   with deliberate indifference. For the statute of limitations argument, the Court must

14   undertake an analysis of what further harassment Plaintiff suffered caused by the

15   University's deliberate indifference, and whether that further harassment occurred

16   within the statute of limitations (i.e., since February 16, 2020), in a situation within

17   the University's control. *Brown*, 23 F.4th at 1179; *Stanley*, 433 F.3d at 1136. Each

18   of the forms of further harassment Plaintiff alleges in her FAC fail either one or both

19   of these requirements: either they are time-barred or they did not occur within the

20   University's control.

21        **1.      Additional encounters with the assailant (¶¶ 25-28)**

22        Plaintiff's amended complaint contends she saw the perpetrator on campus at

23   different locations after the assault (¶¶ 25-28). But she does not indicate when these

24   sightings occurred. And this timing is critical: first, liability can only attach if these

25   sightings occurred after the University was notified of the assault in June 2019.

26   Second, these incidents are time-barred unless Plaintiff can plausibly allege that they

27

28

N<small>YE</small>, S<small>TIRLING</small>, H<small>ALE</small> & M<small>ILLER</small>
33 W<small>EST</small> M<small>ISSION</small> S<small>TREET</small>, S<small>UITE</small> 201
S<small>ANTA</small> B<small>ARBARA</small>, C<small>ALIFORNIA</small> 93101

**NOTICE OF MOTION AND MOTION TO DISMISS**

occurred after February 16, 2020.[4] Especially where the Court has counseled Plaintiff to plead specific facts to overcome the statute of limitations defense, the lack of specific dates here is fatal to the Title IX claims.[5] The claim is time-barred and cannot be cured by amendment.

### 2.    Sorority harassment (¶¶ 36-44)

Because she can cite to no further harassment in a situation within the University's control within the statute of limitations, Plaintiff instead asks this Court to create new law – to say that the University can be liable for assault from third parties occurring in a context not within the University's control. In this case, Plaintiff asks the Court to say that harassment from her former sorority sisters in an incident she deems "hazing" off campus, is in fact actionable in Title IX as a gender discrimination injury causally related to the University's alleged deliberate indifference to a sex assault claim. (Dkt. 20, ¶¶ 42, 43, 63.) This claim does not save the otherwise time-barred post-assault Title IX theory.

Specifically, Plaintiff has failed to allege the further harassment she suffered from her sorority sisters occurred in a context within the University's control. The first element required for a post-assault deliberate indifference theory focuses on the control the University exercises over both the harasser and the context of the harassment. *Davis,* 526 U.S. at 645-650; *Brown,* 23 F.4th at 1180 ("It would be unreasonable to conclude that Title IX gives educational institutions adequate notice that accepting federal education funds imposes on them liability for what happens between students off campus, unconnected to any school event or activity.")

---

[4] This leaves an exceptionally narrow window for any actionable harm because the COVID-19 pandemic hit less than a month later, with the University moving to remote education March 10, 2020, and the assailant graduating at the same time, no longer within the University's control.

[5] Plaintiff may argue the statute accrued when she obtained documents in response to a Public Records Act request (¶ 76); that is incorrect, as that focuses on the knowledge of a legal right of action, not on knowledge of her alleged injury.

**NOTICE OF MOTION AND MOTION TO DISMISS**

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1    Here, the further harassment Plaintiff identifies from her sorority sisters as

2    occurring just two days from the statute (February 18, 2020), is that she was

3    "accosted by a group of the sorority members who verbally assault her and

4    physically pushed her." (Dkt. 20, ¶ 42, 62, 63.) If all information is taken as true,

5    this is not a situation occurring in a context within the University's control, as the

6    further "harassment" occurred off campus, in a situation not within the University's

7    control. This Court has considered facts demonstrating more university control –

8    where the subsequent encounters were on campus – and still found that was

9    insufficient to adequately plead causation. *Tanjaya v. Regents of the Univ. of Cal.*,

10   C.D. Cal. Case 2:19-cv-02956-GW-FFM, Dkt. 56, p. 10, aff'd 830 F. App'x 526,

11   527 (9th Cir. 2020) (plaintiff did not adequately plead the university caused her to

12   suffer further harassment where Plaintiff encountered the alleged assailant twice at

13   on campus facilities).

14   As a second basis to dismiss the "further harassment via third party" theory, is

15   that Title IX does not extend to these types of non-gender-based student harassment.

16   Under Plaintiff's theory, a Title IX plaintiff could point to any negative conduct that

17   may occur after a Title IX report, from anybody, and say that is the further

18   harassment necessary for a post-assault theory. If Plaintiff was in fact subject to

19   abuse in a sorority hazing situation from other persons, that is an entirely different

20   factual circumstances that is simply not relevant to this claim, and not actionable

21   gender discrimination under Title IX. *See, e.g., Lopez v. Regents of the Univ. of*

22   *Calif.*, 5 F.Supp.3d 1106, 1123-24 (N.D. Cal. 2013), Title IX does not address all

23   instances of student-on-student harassment (*ibid.*), and this is certainly one not

24   falling within the statutory language or intent.

                **a.**     **The vague allegations of denial of housing and**
25   **academic accommodations are not "further**
26   **harassment" that triggers Title IX liability**

27   Plaintiff makes many allegations that the University denied her housing,

28   denied her academic accommodations, and suspended her financial aid. These

20
**NOTICE OF MOTION AND MOTION TO DISMISS**

allegations, even if true, cannot revive the otherwise time-barred claim.

In the first instance, many of these allegations occurred before February 2020, and indeed, many before the University even had notice of the assault. (*See, e.g.,* Dkt. 20, ¶¶ 17, 18, 20, 21, 64.) Moreover, there are no specific allegations of further harassment from the perpetrator that occurred because of the alleged failure to accommodate housing or academics- for instance, Plaintiff does not allege she was in a class with the perpetrator, and the University refused to switch her classes. Again, the perpetrator was no longer a University student for all but the first three weeks of the statutory period.

### 3. The Title IX-Retaliation Claim Fails

Plaintiff's Title IX-retaliation claim fails for two reasons: she fails to allege with specificity that the University – as opposed to individual professors – retaliated against her, and it is time-barred.

For liability to attach on a Title IX retaliation claim, a plaintiff must show that the funding recipient retaliated against her because she complained of sex discrimination. *Jackson v. Birmingham Board of Education*, 544 U.S. 167, 174 (2005). That is, "an appropriate official of the funding recipient must have actual knowledge of discrimination and respond with deliberate indifference before a private party may bring suit." *Id*. at 180 (citing *Gebser*, 524 U.S. at 288, 289–90). In *Jackson*, the *school board itself* terminated the plaintiff's coaching duties after he complained to his supervisors about unequal treatment of the girls' basketball team. *Id*. at 171–72. Similarly, in *Gebser*, the Supreme Court held that an educational institution is responsible under Title IX only for its "own official decision[s]," not "for its employees' independent actions." 524 U.S. at 290–91; see also *Davis*, 526 U.S. at 640–42 ("reject[ing] the use of agency principles to impute liability to the [funding recipient] for the misconduct of its teachers").

Using this framework, courts have dismissed Title IX retaliation claims where there are no allegations that the University itself, as opposed to individual actors

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

21

who do not have knowledge of the protected activity (i.e., professors or those working in the financial aid office), retaliated against the plaintiff. *See, e.g., Sherman v. Regents of the Univ. of Calif.*, 2022 WL 1137090, at *12-13 (N.D. Cal. Apr. 18, 2022) (dismissing Title IX retaliation claim where no evidence the University, as opposed to individual professors, retaliated against the plaintiff); *Tanjaya v. Regents of the Univ. of Cal.,* 830 F. App'x 526, 527 (9th Cir. Nov. 30, 2020) (same)).

Here, the allegations in the complaint are insufficient to plausibly show that an appropriate person at the University, with notice of the retaliation, was deliberately indifferent, causing Plaintiff to suffer further retaliation. The best Plaintiff could prove based on the unclear allegations in the complaint is that individual employees – professors, financial aid employees, or housing employees, took adverse action against Plaintiff. But she cannot, or has not, plausibly shown that an appropriate person at the University (one who could impose corrective measures) received notice of the allegedly retaliatory act, acted with deliberate indifference, thereby causing additional retaliation to ensue.[6] This is fatal to the Title IX-retaliation claim. *Tanjaya,* 830 F. App'x at 527.

In addition to the requirement of showing the University, taking the allegedly retaliatory action, had actual notice of the retaliation, was deliberately indifferent thereto, causing further retaliation, Plaintiff must show that the "injury" – the further retaliation – occurred within the two-year Title IX statute of limitations. *Thomsen v. City College of San Francisco,* 2008 WL 5000221, at * 3 (N.D. Cal. 2008).

Here, there are two timing issues with respect to Plaintiff's Title IX claim. First, Plaintiff contends that she suffered severe emotional distress after the assault,

Nye, Stirling, Hale & Miller
33 West Mission Street, Suite 201
Santa Barbara, California  93101

---

[6] For instance, there is no evidence that even one professor who purportedly denied her accommodations or gave her a bad grade causing academic probation knew she made a Title IX complaint.

**NOTICE OF MOTION AND MOTION TO DISMISS**

causing her grades to decline significantly, which led The Regents to place her academic suspension, which caused financial aid to suspend. (Dkt. 20, ¶¶ 16-17.) Plaintiff contends her financial aid was suspended based on her poor grades on July 24, 2018, and January 19, 2019. (*Id.*)[7] Thus, the allegations of pre-report placement on academic probation and financial aid suspension are well-beyond the two-year statute of limitations.

The second issue relates to the non-specific allegations of continuing retaliation by placement on academic probation and financial aid suspension. If, assuming for purposes of a Rule 12 motion that these were timely (which cannot presently be determined based on the conclusory allegations in the FAC), then they are, as a matter of law, not causally related to the protected activity. A Title IX retaliation claim requires that the adverse action be causally connected to the protected Title IX activity. *Ollier,* 858 F.Supp.2d at 1113. The protected activity here is the June 28, 2019, report to Title IX, and the adverse action, if any, is the denial of educational benefits because of Plaintiff's report of gender discrimination under Title IX. Any retaliatory actions taken by specific employees with knowledge of her Title IX complaint (which is not alleged in the FAC), from February 16, 2020, to present do not meet the temporal proximity required to sustain a retaliation claim, as that is eight months after the protected activity. *See Clark County School Dist.,* 532 U.S. at 273–74 (citing cases finding a three-month period and a four-month period too long to be considered temporal proximity for retaliation); *Manatt,* 339 F.3d at 801 ("nine months" between a plaintiff's complaint and the adverse decision was too long to satisfy the causation prong.). Here again, Plaintiff filed this complaint so long after the notice of Title IX claim that to be timely for a statute of

---

[7] There can be no causal connection between Plaintiff's report of assault and the actions of placing her on academic probation/financial aid suspension, as Plaintiff did not report the assault until June 28, 2019, after Plaintiff was on academic probation

**NOTICE OF MOTION AND MOTION TO DISMISS**

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

limitations analysis, the adverse "retaliatory" actions cannot be causally connected to her filing of the Title IX complaint in June 2019.

### D.     The ADA Claim Fails On Multiple Bases

Plaintiff asserts a claim for violation of the ADA against The Regents, alleging The Regents discriminated against her based on her disability. The ADA claim fails because Plaintiff has not pled the elements necessary to recover under the ADA. To establish a Title II violation based on a reasonable accommodation theory, Plaintiff must show:  (1) she is a "qualified individual with a disability"; (2) she was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was solely by reason of her disability. *See Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001).

The FAC alleges Plaintiff "communicated her mental health condition and status as a survivor of rape to The Regents" but the Regents "refused to make reasonable accommodations for their policies regarding academic probation and loss of financial aid." (Dkt. 20, ¶ 69.) However, there is nothing in the FAC stating what Plaintiff's specific disability is, whether it is a qualifying disability under the ADA and whether she provided notice/supporting documentation to UCSB. Moreover, publicly available information demonstrates UCSB students can register with the Disabled Students Program online (https://dsp.sa.ucsb.edu/) to request accommodations. There is nothing in the FAC indicating Plaintiff did so or otherwise engaged in the designated process to obtain accommodations and was denied any accommodations.

An ADA plaintiff must allege "the existence of specific reasonable accommodations that [the defendant] failed to provide." *Burton v. City of Pasadena*, 2015 WL 470373 at *5 (C.D. Cal. Feb. 4, 2015). Indeed, "[i]n ADA cases, the plaintiff bears the burden of establishing the elements of the prima facie case,

Nye, Stirling, Hale & Miller
33 West Mission Street, Suite 201
Santa Barbara, California  93101

24

NOTICE OF MOTION AND MOTION TO DISMISS

including–if needed–the existence of a reasonable accommodation that would enable him to participate in the program, service, or activity at issue." *Pierce v. County of Orange*, 526 F.3d 1190, 1217 (9th Cir. 2008). Plaintiff here alleges she was not provided with academic accommodations such as "a note taker, a private place to take tests, and extra time on tests and assignments." (Dkt. 20, ¶ 71.) However, there is nothing in the FAC indicating if, how, or when she requested any of these specific accommodations nor that she was denied reasonable accommodations due solely to her alleged disability.

The Ninth Circuit has held this is an appropriate basis to dismiss an ADA claim in the education context. *Csutoras v. Paradise High Sch*., 12 F.4th 960, 969 (9th Cir. 2021) ("[B]ecause ... the parties agree a social-related accommodation was never requested or denied, Csutoras cannot establish the second element of his ADA and Rehabilitation Act claims.") Several district courts have also imported this requirement from the workplace into the school in cases alleging the school's failure to reasonably accommodate a student disability. See *Patton v. Phoenix Sch. of Law LLC*, No. CV–11–0748–PHX–GMS, 2011 WL 1936920, at *4 (D.Ariz. May 20, 2011) ("Under the ADA, an educational institution's 'obligation to engage in an interactive process with the [student] to find a reasonable accommodation is triggered by [the student] giving notice of the [ ] disability and the desire for accommodation.' " (citation omitted)); *Lei Ke v. Drexel Univ*., No. CIV.A. 11–6708, 2013 WL 5508672, at *4 (E.D.Pa. Oct. 4, 2013) ("While Plaintiff contends in the Third Amended Complaint that he failed his exams because he was never given an accommodation for his glaucoma and for this reason the ADAAA applies here, Plaintiff also admits that he never requested an accommodation."); *Rivera–Concepcion v. Puerto Rico*, 786 F.Supp.2d 442, 454–55 (D.P.R.2010) ("[P]laintiffs have not alleged that Jayrie 'ever sufficiently requested the accommodation in question' so as to 'adequately put [defendants] on notice of her disability and need for accommodation.... There is simply no indication in the amended complaint that

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

Jayrie or her family ever requested any form of accommodation for Jayrie's disability, whether before or after her expulsion.' " (citation omitted); *Girard v. Lincoln Coll. of New England*, 27 F.Supp.3d 289, 294 (D.Conn.2014) ("Although Plaintiff seems to argue in her opposition brief that her anxiety also constituted a disability under the [ADA], Plaintiff testified in her deposition that she never identified it to Lincoln as a disability and never requested accommodations for it.... Thus, Plaintiff's alleged anxiety cannot form the basis of her claim under the [ADA]."); *Stearns v. Bd. of Educ. for Warren Twp. High Sch. Dist. # 121*, No. 99 C 5818, 1999 WL 1044832, at *3 (N.D.Ill. Nov. 16, 1999) ("There is no dispute in this case that defendants knew nothing about Higgins' alcoholism when they revoked his eligibility.... Thus, as in Hedberg, defendants' awareness of the alleged consequences of Higgins' alcoholism is not a basis for imposing ADA or Rehabilitation Act liability on them.").

As a second basis to dismiss the ADA claim, "in addition to showing that the defendant failed to provide a reasonable accommodation, a plaintiff alleging a claim under Title II of the ADA must show that the denial of the benefits of services, program, or activities was due *solely* to the plaintiff's disability, and not to the plaintiff's 'inability to satisfy a condition of eligibility' to participate in or receive the benefits of the public entity's services, activities, or benefits for reasons other than his disability." *Shatford v. Los Angeles County Sheriff's Dep't.*, 2016 WL 1579379 at *9 (C.D. Cal, Mar. 29, 2016) (emphasis added), citing *Weinreich v. Los Angeles County Metropolitan Transp. Authority*, 114 F.3d 976, 978-979 (9th Cir. 1997). Here, Plaintiff can never meet this requirement, as the FAC expressly alleges she was purportedly discriminated against for reasons other than her disability, namely her gender (i.e., Title IX discrimination). For these reasons, Plaintiff's ADA claim must be dismissed.

### E.    Plaintiff's Section 504 Claim Fails for Multiple Reasons

Like the ADA claim, Plaintiff's Section 504 discrimination claim also fails.

First, the FAC does not contain any specific allegations as to what accommodations were requested and when. While the ADA has a longer, three-year statute of limitations, a Section 504 claim under the Rehabilitation Act is subject to a two-year statute of limitations. *Douglas,* 271 F.3d at 823 n. 11 (analyzing under California's previous one- year personal injury statute of limitations). From the allegations in the FAC, it cannot be determined when, if ever, the University discriminated against Plaintiff solely because of her disability since February 16, 2020.

Second, a Section 504 claim in the special education setting requires Plaintiff plead she was "denied benefits or services, or otherwise subject to discrimination, *solely* because of [her] disability." *R.K., ex rel. T.K.*, 2007 WL 2778730, *9 (emphasis added); citing *Zukle,* 166 F.3d at 1045. As analyzed under the ADA claim, Plaintiff cannot plausibly allege she was discriminated against solely because of her disability, as she alleges in the same pleading she was purportedly discriminated against based on other reasons. Thus, the Section 504 claim fails.

### F.    The Unruh Act Does Not Apply to The Regents

Plaintiff's Unruh Act claim fails on two bases. First, The Regents is entitled to Eleventh Amendment immunity for the Unruh Act claim. *Talevski,* 2013 WL 4102202, at *4. Second, a recent California Supreme Court case held that educational institutions, like The Regents, are not "business establishments" subject to the Unruh Act when they provide educational services to students. *Brennon B.,* 513 P.3d at 984, 985. In reaching this decision, the *Brennon B.* court analyzed the legislative history of the Unruh Act, which revealed the California Legislature contemplated adding "schools" to the definition of the "business establishment" subject to the Act, but ultimately decided to take that language out. *Id.,* at 978. The Unruh Act by its express terms only applies to "business establishments." Because The Regents is not a business establishment under established California Supreme Court precedent, Plaintiff's Unruh Act claim must be dismissed.

### G.    Plaintiff's Claim for Emotional Distress Damages Must Be

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA  93101

27

**NOTICE OF MOTION AND MOTION TO DISMISS**

N<small>YE</small>, S<small>TIRLING</small>, H<small>ALE</small> & M<small>ILLER</small>
33 W<small>EST</small> M<small>ISSION</small> S<small>TREET</small>, S<small>UITE</small> 201
S<small>ANTA</small> B<small>ARBARA</small>, C<small>ALIFORNIA</small>  93101

**Dismissed.**

Plaintiff seeks to recover damages that are unavailable under Title IX or Section 504. Specifically, Plaintiff requests general damages for mental and emotional distress. Even if Plaintiff is given leave to cure the defects in the pleading discussed above, the damages must be dismissed with prejudice pursuant to Supreme Court precedent.

On April 28, 2022, the Supreme Court ruled that "[e]motional distress damages are not recoverable in a private action to enforce either the Rehabilitation Act of 1973 or the Affordable Care Act." *Cummings,* 142 S.Ct. at 1565. Since those statutes were enacted under the Spending Clause, federal funding recipients who could potentially be held liable must have clear notice of the particular type(s) of damages available. *Ibid.* That is not the case for emotional distress damages, as they are not traditionally available in suits for breach of contract. *Id.* at 1567. The Supreme Court's ruling extends to Title IX claims, as it is one of the four federal anti-discrimination statutes enacted pursuant to the Spending Clause. *Id.* at 1569-70, 1577-78; *Davis,* 526 U.S. at 640 ("[W]e have repeatedly treated Title IX as legislation enacted pursuant to Congress' authority under the Spending Clause…").

Since the Supreme Court's decision in *Cummings,* district courts have applied the decision to dismiss claims for emotional distress damages in Title IX cases. *Doe 1 v. Curators of Univ. of Missouri,* 2022 WL 3366765, at *3 (W.D. Mo. Aug. 15, 2022); *Doe v. Bd. Of Regents of Univ. of Nebraska,* 2022 WL 3566990, at *4 (D. Neb. Aug. 18, 2022). Plaintiff therefore cannot recover emotional distress damages under Title IX or Section 504, the only two sources of emotional distress damages in her complaint.

**H.    The FAC Fails in Its Entirety for Exceeding the Scope of The Court's Order**

At the July 28, 2022, hearing on The Regents' motion to dismiss the complaint, the Court granted The Regents' motion, with leave to amend on two

**NOTICE OF MOTION AND MOTION TO DISMISS**

specific issues. First, the Court allowed Plaintiff to amend the complaint to address The Regents' statute of limitations argument. RFJN, Ex. 1, 9:3-9. Second, the Court allowed Plaintiff leave to add one new cause of action, as requested by Plaintiff – a claim under California's Unruh Act. *Id.*, 4:16-22, 10:25-11:3. Instead of following the Court's guide, and express order, Plaintiff has (1) not alleged any further harassment from the perpetrator within the statutory period, and (2) added a bevy of new claims unrelated to the original claim and not allowed by this Court, alleging that instead of gender discrimination, it is now disability discrimination or retaliation. This is improper and grounds to dismiss. *Moore,* 2016 WL 7048991, at *3 ("Instead of properly amending the claim she had leave to amend, Moore advances a new claim entirely. The new claim could be dismissed on this ground alone.").

## IV.   CONCLUSION

For the forgoing reasons, the court should dismiss Plaintiff's FAC. Dismissal with prejudice is appropriate because Plaintiff is incapable of pleading facts establishing a plausible entitlement to relief on any of her claims. See *Lopez v. Smith*, 203 F.3d 1122, 1129-30 (9th Cir. 2000).

Dated: September 16, 2022          NYE, STIRLING, HALE & MILLER, LLP

By: _____
Jonathan D. Miller, Esq.
Alison M. Bernal, Esq.
Attorneys for Defendant, REGENTS OF
THE UNIVERSITY OF CALIFORNIA

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101